### NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY v. MAYMIE C. FREEMAN.

Decided November 2, 1898.

**1. Life Insurance—Pleading—Setting Out Policy.**

A petition in an action on a policy of insurance need not set out the entire policy, but it is sufficient if it sets out the substance thereof and avers facts showing the defendant's liability thereon.

**2. Same—Waiver of Breach.**

An insurance company, by unconditionally accepting and retaining a premium after knowledge of the forfeiture of the policy by breach of a condition as to engaging in certain occupations, waives the forfeiture and is estopped from setting up the same as a defense.

**3. Same—Notice to Agent—Waiver.**

Notice to an agent when acting within the scope of his authority and with reference to a matter over which his authority extends, is notice to the principal, and the rule applies where the agent of an insurance company has notice at the time he accepts payment of a premium due on a life policy that the insured has engaged in a prohibited occupation.

**4. Same—Interest Payable, When.**

Insured is entitled to interest from the time of the insurer's denial of its liability, if he is entitled to recover under the policy.

APPEAL from Bexar. Tried below before Hon. J. L. CAMP.

*Houston Bros.,* for appellant.

*Lewy & Sehorn,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee, Maymie C. Freeman, against the appellant, the Northwestern Mutual Life Insurance Company, on March 25, 1896, upon the policy of insurance described in our conclusions of fact. The substance of the policy was pleaded in appellee's petition, and such facts were averred as, if true, would show the liability of appellant.

The appellee answered by general and special exceptions, a general denial, and by pleading specially that, when killed, the assured was engaged as a brakeman on a railroad train, and therefore by the terms of the policy it was not liable thereon.

The appellee by supplemental petition, in replication to appellant's special plea, pleaded that the company was estopped from making such defense upon the ground that its general agents, Peacock & Smith, had, with full knowledge of the fact that the assured had changed his occupation, and was engaged in the employment of a brakeman on a railroad train, received for appellant payment of the quarterly premiums falling due on October 9, 1894, and January 9, 1895.

All of the exceptions of appellant to appellee's petition were overruled, except one.

The case was tried before a jury, the principal issue being as to whether Peacock & Smith, as agents of the company, knew when they received payment of either of the premiums falling due on October 9, 1894, and January 9, 1895, that the assured was employed as a brakeman on a railway train, and the trial resulted in a verdict upon which judgment was entered against appellant.

*Conclusions of Fact.*—On the 9th day of April, 1894, appellee issued its policy to Robert Randolph Freeman, in consideration of $10.67, payable quarterly on the 9th days of April, July, October, and January, and every year thereafter during the first twenty years of the continuation of said policy, and obligated and bound itself to pay to appellee, Maymie C. Freeman, the wife of the assured, the sum of $1500, in sixty days after ' due proof of the fact and cause of the death of Robert R. Freeman.

The policy provides that if the assured shall be personally engaged as an engineer or fireman of any locomotive engine, in switching, or in coupling or uncoupling cars, or be employed in any capacity on any trains or railroad, except as a passenger or sleeping-car conductor, mail agent, express messenger, or baggage master, that it shall be null and void.

Attached to the policy was the original application for the insurance made and signed by the assured, Robert Randolph Freeman, in which the tenth paragraph is as follows: "Do you understand and agree that no statements, representations, or information made or given by or to the person soliciting or taking this application for a policy, or to any other person, shall be binding on the company or in any manner affect its rights, unless such statements, representations, or information be reduced

to writing, and presented to and approved by the officers of the company at the home office? Yes."

At the time the policy was issued the assured kept a livery stable in Austin, Texas, but afterwards abandoned such vocation, and on or about the 25th day of October, 1894, applied for the position of and became a brakeman on the Galveston, Harrisburg & San Antonio Railway Company, and on the 7th day of April, 1895, while performing his duties as a brakeman on one of the company's trains, was killed.

All the premiums due on the policy at the time of his death had been paid, the quarterly premiums due on October 9, 1894, and January 9, 1895, having been paid for the assured by his brother, J. H. Freeman, to Peacock & Smith, general agents of appellant company, to whom renewal receipts had been forwarded by the company for collection.

The assured never gave appellant or its general agents, Peacock & Smith, notice of the fact that he had changed his occupation from livery stable keeper to that of a railroad brakeman. But Messrs. Peacock & Smith, as general agents of the company, knew of such change in his vocation, and as general agents of appellant company, with knowledge of such change, accepted and remitted to the home office of the company the quarterly premium paid on January 9, 1895.

The policy of insurance was effected through the agency and solicitation of Peacock & Smith, but they had no express authority to issue policies of insurance, or to pass upon applications for policies, or to waive any conditions of policies, or of applications for policies.

After the death of the assured, his brother, J. H. Freeman, applied to Messrs. Peacock & Smith, as agents of appellant, for blanks on which to make out proof of death, and such blanks were furnished to him by them, but at the time they told him the company would refuse to pay the policy on account of the change of assured's occupation. Ever since its knowledge of the assured's death, appellant has denied any liability upon the policy upon the ground that Robert R. Freeman was engaged at the time of his death in a vocation prohibited by the policy, and which by its terms rendered it void.

*Conclusions of Law.*—1. It was not necessary for appellee to set out in her petition the entire policy. She was only required to plead its substance, and aver such facts as would show appellant's liability thereon. Insurance Co. v. Rivers, 28 S. W. Rep., 453; Insurance Co. v. Watt, 39 S. W. Rep., 200. Her petition conformed fully to these requirements. Therefore the court did not err in overruling appellant's exceptions to it.

2. It is a well established principle that if a forfeiture has occurred for breach of any condition in an insurance policy, and the company thereafter, with knowledge of the facts, unconditionally accepts and retains a premium, it thereby waives the former forfeiture and is estopped thereafter from setting up the grounds of forfeiture as a defense. 2 Joyce on Ins., sec. 1369, and authorities cited in note 151; Insurance Co. v. Hanna, 81 Texas, 487; Morris v. Insurance Co., 43 S. W. Rep., 898;

Beach on Ins., sec. 762, and authorities cited in note 2; Richards on Ins., sec. 77; Walsh v. Insurance Co., 6 Am. Rep., 664; Insurance Co. v. Raddin, 120 U. S., 183; McGurk v. Insurance Co., 16 Atl. Rep., 263. As is said by Mr. Justice Gray in Insurance Company v. Raddin, supra: "If insurers accept payment of a premium after they know there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach. Upon principle and authority there can be no doubt about this. To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract, while they decline to bear its burdens."

3. It is a general rule, settled by an unbroken current of authority, that notice to an agent when acting within the scope of his authority, and in reference to a matter over which his authority extends, is notice to the principal. This rule rests upon two theories. The first is based on the legal identity of the agent of the principal,—in fact that the agent, while keeping within the scope of his authority, is, as to the matter embraced within it, for the time being the principal himself, or at all events the alter ego of the principal.

The other is based upon the rule that it is the duty of the agent to disclose to his principal all notice or knowledge which he may possess, and which is necessary for the principal's protection or guidance. This duty the law presumes the agent to have performed, and imputes to the principal whatever notice or knowledge the agent then possessed, whether he has in fact disclosed it or not. Mechem on Agency, secs. 718, 719.

There is no controversy about the fact that Peacock & Smith, as agents of appellant company, were authorized to collect the premiums upon the policy issued to appellee's husband. No limitation upon this authority is shown or attempted to be shown, for it can not seriously be contended that the question and answer contained in the application for the policy quoted in our conclusions of fact in any way relate to the collection of the premiums.

4. As to whether Peacock & Smith, at the time they received payment of the premiums, had notice of the fact that the assured was then engaged in the employment of brakeman upon a railroad train, was a question to be determined by the jury. This question was submitted to the jury in an appropriate charge, and the jury having determined the question in favor of appellee, and there being evidence which, in our minds, was sufficient to show that the last premium was received by said agents with full notice of the fact that Robert R. Freeman was then employed as a brakeman, we can not disturb the jury's findings. It is not for us to pass upon the credibility of the witnesses. That is the exclusive province of the jury, and if they, with the witnesses before them, credited those of the appellee, rather than the witnesses of the appellant, it was their affair, not ours.

5. It follows from what we have said that the court did not err in ad-

mitting evidence to show that Peacock & Smith, as agents of appellant, had knowledge, when they received the premiums due on the policy, of the fact that the assured was employed as a brakeman on the train; nor in submitting in its charge the issue raised by such testimony (it having been pleaded) to the jury, nor in refusing to hear special charge number 2 asked by appellant.

The appellant can not complain of that part of the charge which instructs the jury that, should they find for plaintiff, their verdict would carry interest from the 6th day of June, 1895, because it had from the outset denied any liability upon the policy. When it denied its liability, the cause of action arose, and appellee was entitled to interest from that time. Insurance Co. v. Josey, 6 Texas Civ. App., 293; Insurance Co. v. Jacobs, 56 Texas, 372.

There is no error in the judgment appealed from, and it is affirmed.

*Affirmed.*

JAMES, Chief Justice, did not sit in this case.

Writ of error refused.