SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. MRS. AMANDA CARRINGTON.

Decided November 25, 1905.

**1.—Delivery of Benefit Certificate—Agency—Waiver.**

The authority of an agent is to be determined by the actual power and authority conferred upon him, and not by the name which may be given him, nor by the restrictions contained in the regulations of the order, if these regulations are contrary to the actual power conferred. The application for a benefit certificate, the certificate itself, and the constitution and by-laws of appellant provided that no liability should begin on the certificate until delivered to the member in person and while in good health. The secretary of the local camp was the agent of the appellant and the delivery of the certificate was entrusted to his discretion. With a knowledge of the facts, he delivered the certificate to the beneficiary contrary to said regulations. Held, the appellant was bound by his acts.

**2.—Conclusion of Witness.**

A witness undertook to testify as to the knowledge of other officers of the association concerning certain facts. Held, hearsay and a conclusion of the witness.

**3.—Other Similar Acts of Agent—Evidence.**

It was competent for plaintiff to prove that the same agent had delivered other benefit certificates to other persons than the member named therein, contrary to the regulations of the order, as a circumstance tending to show that said regulations were not binding.

**4.—Amount of Assessment—When Material.**

The benefit certificate sued on provided "that the payment of the certificate will be based upon one assessment on the entire beneficiary membership." Evidence of the amount of one assessment was material to show that one assessment would raise the amount called for by the policy.

**5.—Damages and Attorney Fees.**

The appellant being a mutual benefit organization, doing business through local camps, is not included in the penalty imposed by article 3071 of the Revised Statutes.

Appeal from the District Court of Hill. Tried below before Hon. O. L. Lockett.

*Brome & Burnett, W. E. Spell* and *Lewis & Phillips,* for appellant.— That the clerk of the local camp could not waive the regulations of the order, cited: Matkin v. Supreme Lodge, 82 Texas, 301; McLendon v. Woodmen of World, 64 S. W. Rep., 36; Wilcox v. Sovereign Camp, 76 Mo. App., 573; McCoy v. Roman C. Ins. Soc., 25 N. E. Rep., 289.

The said Carrington and appellee, who purported to act for him on the occasion in question with respect to obtaining possession of the certificate, were chargeable with notice of the provisions of the constitution and laws of appellant with respect to the delivery of a certificate and the limitations upon the authority of Traylor in such transaction and that he was only authorized to deliver the certificate to Carrington in person, and while he was in good health. ·Supreme Lodge K. P. and Ladies of Honor v. Grace, 60 Texas, 569; Splawn v. Chew, 60 Texas, 535; Sovereign Camp W. of W. v. Rothschild, 40 S. W. Rep., 557; Bacon, Ben. Soc. & Life Ins., sec. 426; Conklin v. Supreme Council, etc., 38 Atl. Rep., 659, and cases cited; Niblach, Ben. Soc., p. 195; McCoy v. Roman Catholic Mut. Ins. Co., 25 N. E. Rep., 289; Lyons v. Ass. Roy. Soc., 26 N. E. Rep., 236; Modern Woodmen of Am. v. Tevis, 117 Fed. Rep., 369; Field v. National Council, 89 N. W. Rep., 773; Fraternal U. A. v. Hurlock, 75 S. W. Rep., 539; Fitzmaurice v. Mutual Life Ins. Co., 84 Texas, 63; Kempe v. Woodman of W., 44 S. W. Rep., 688.

That plaintiff was estopped by the terms of the policy from setting up or relying on any action on the part of the agent: Cook v. Standard Acc. Ins. Co., 84 Mich., 12, and cases cited; Thompson v. Insurance Co., 104 U. S., 252; Union Mutual Ins. Co. v. Wilkinson, 13 Wall., 222.

*Morrow & Smithdeal,* for appellee.—That the appellant was bound by the action of Traylor, clerk of the local camp, in delivering the policy, cited: Northwestern Life Assn. v. Findley, 68 S. W. Rep., 696; Knights of P. v. Withers, U. S. Sup. Ct. (Law. Ed.), book 44, 767; Knights of P. v. Bridges, 15 Texas Civ. App., 196; Washington Life Ins. Co. v. Berwald, 72 S. W. Rep., 436; Thornberg v. Farmers' Life Ins., 98 N. W. Rep., 105; Wingham v. Independent Order Foresters, 44 Ore., 543; Morrison v. Insurance Co., 69 Texas, 353; Whitesides v. Supreme Conclave, 82 Fed. Rep., 275; Daniher v. Grand Lodge, 37 Pac. Rep., 247; New York Life Ins. Co. v. Smith, 41 S. W. Rep., 685; Merrill v. Southwestern Tel. & Tel. Co., 73 S. W. Rep., 422; Galveston, H. & S. A. Ry. Co. v. Neel, 26 S. W. Rep., 788; Order of Columbus v. Fuqua, 60 S. W. Rep., 1020.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellee brought this suit as the beneficiary in a certain beneficiary insurance certificate alleged to have been issued by appellant. It was in substance alleged: That appellant was a fraternal beneficiary insurance association, or life insurance company, incorporated under the laws of the State of Nebraska, doing business in Texas, writing life insurance, and issuing policies or certificates of life insurance. That on the 3d of September, 1902, it issued its certificate of insurance to Raymond L. Carrington, the son of appellee, among other things providing that the said Raymond was a member of the local camp of said order in Hillsboro, Texas, and while

in good standing as a member of the order was entitled to participate in its beneficiary funds to the amount of $500 should his death occur during the first year of his membership, and that there should also be paid the sum of $100 for placing a monument on his grave. That appellee was the beneficiary named in the certificate, and that the said Raymond died during the first year of his membership, having at the time paid all dues and demands made upon him by the order and as required by the terms of the insurance contract, by-laws and constitution of the order, and that he was in good standing and entitled to participate in the said fund. That proof of his death was duly made, and by virtue of the contract appellant became liable in the sum of $500 insurance, and $100 for the placing of a monument, twelve percent damages, to wit $60, and reasonable attorney's fees, to wit $250.

On the 14th day of September, 1904, appellant filed its amended answer, pleading a general demurrer and general denial, and specially, it denied that the said Raymond L. Carrington ever became a member of the local camp of appellant, or a member entitling him to participate in its beneficiary fund. It further denied that there was ever issued or delivered to him the alleged certificate or policy of insurance sued upon, or any other policy or certificate binding it to pay anyone any amount upon his death. The facts relating to the connection of the said Carrington to appellant were specifically set out.

Trial of the case was had before a jury, and resulted in a verdict and judgment for plaintiff for $803.83, being a recovery on the certificate of $708.83 and $100 attorney's fees. Defendant appealed.

*Conclusions of fact.*—Appellant is a fraternal benefit society incorporated under the laws of the State of Nebraska. It operates through subordinate or local camps, and has a local camp at Hillsboro, known as Willow Camp No. 86, of Hillsboro, Texas. M. A. Traylor is the clerk of said local camp at Hillsboro. Raymond L. Carrington made application on July 31, 1902, for membership in the order and to be entitled to participate in its beneficiary fund in case of his death. This application was duly received at the home office of appellant, and on the 11th of August, 1902, a beneficiary certificate was issued by it and transmitted to M. A. Traylor, clerk of the local camp at Hillsboro for delivery to Raymond L. Carrington upon compliance by him with the rules of the order and the terms of the application for said certificate. On the —— day of September, 1902, M. A. Traylor delivered the benefit certificate to appellee, the mother of said Raymond L. Carrington, with knowledge at the time of delivery that said Raymond L. Carrington was sick, and in the hospital at Sedalia, Missouri, for treatment. Said Traylor was the agent of appellant, and had authority to deliver said benefit certificate. Mrs. Carrington paid to said Traylor $1.10, the amount due by Raymond L. Carrington to said camp, and executed an acceptance slip in the name of Raymond L. Carrington for the policy. The acceptance of the balance due from Raymond L. Carrington by M. A. Traylor, and the delivery of the policy to Mrs Carrington by him, knowing at the time that Raymond L. Carrington was sick and undergoing treatment, was a waiver of the written regulations of the appellant that it was not to be liable on the beneficiary certificate unless the

same was delivered to the insured in person, and while in good health. Raymond L. Carrington died of acute Bright's disease in October, 1902.

*Opinion.*—It is contended that, as the terms of the application made by Raymond L. Carrington for the benefit certificate, and the certificate itself, and the constitution and by-laws of appellant, each provided that no liability should begin on the certificate until delivered to Raymond L. Carrington in person, and while in good health, and the undisputed testimony being that it was· neither delivered in person nor while in good health, no recovery could be had by appellee. The correctness of this contention depends upon the authority and power conferred by the Sovereign Camp upon M. A. Traylor with respect to the delivery of its policies. This authority is to be determined by the actual power and authority conferred upon him, and not by the name which appellant had given him, nor by the restrictions contained in the regulations of the order if these regulations were contrary to the actual power which he possessed. In reference to his authority it was shown that it was his duty to deliver the certificate of insurance to the members of Willow Camp No. 86. He testified: "It was discretionary with me to withhold the policy if the applicant was in bad health and I knew that fact." He further stated: "I wouldn't be compelled to deliver the policy if I knew the applicant was in bad health. I had a right to withhold the policy, and was not compelled to deliver it to any person other than the member himself. I could have refused, under my authority, to have delivered the policy to Mrs. Carrington, but I did not refuse to deliver it to her. I delivered the policy to Mrs. Carrington, intending at the time that the policy should take effect. At the time I delivered the policy I regarded her signature as sufficient, and so stated to her. Mrs. Carrington paid me $1.10 when she took up the policy. That was the amount due." There is no contention that there was anything due on the policy at the time of the insured's death. At the time of the delivery of the policy sued upon M. A. Traylor was clerk of the camp at Hillsboro, which camp the insured had joined. The defendant had no other way of delivering policies except through the clerk of the local camp at Hillsboro. Traylor knew at the time he delivered the policy of the illness of the insured. This evidence makes it clear that M. A. Traylor was more than a mere clerk in respect to delivering the policy. He held himself out as having authority to deliver the policy to appellee. He did deliver it to her knowing that the insured was then sick. He informed Mrs. Carrington, who was there in the interest of the insured, that a delivery to her would be sufficient. The company had entrusted him with the policy for delivery. He had the power to withhold it in his discretion, but, acting for the company, and intending, as he says, to bind the company, he delivered it and accepted the premium therefor. Mrs. Carrington knew nothing of the by-laws of the order, and was not chargeable with notice thereof. She believed that Traylor had the authority, which he claimed to have, and held himself out as having, to deliver the policy to her although the insured was at the time not in good health. If Traylor was the duly authorized agent of the company in respect to delivering ·the policy, and made a delivery in violation of its provisions, the appellant was bound. The

association is a corporation, and can only act through its officers and agents, and any officer or agent empowered to act for it in respect to a particular matter is in such matter a representative of the association, and his acts, done within the scope of his powers and authority in delivering the policy, are binding on the association, although the contract contains a general clause that the association is not to become liable unless the beneficiary certificate is delivered to the insured in person, and while in good health. (Northwestern Life Assn. v. Findly, 68 S. W. Rep., 696; Knights of P. v. Withers, 177 U. S., 260; Knights of P. v. Bridges, 15 Texas Civ. App., 196; Washington Life Ins. Co. v. Berwald, 72 S. W. Rep., 436.) For a full discussion of the principles announced, reference is made to the opinion of Judge Templeton in the case of Northwestern Life Association v. Findly, supra. Traylor having been charged with the duty of delivering the policy, and vested with discretionary powers with respect thereto, had authority to waive the written regulations of the contract relating to the manner of delivery. (See authorities above cited; also Thornberg v. Farmers' Life Assn., 98 N. W. Rep., 105; Morrison v. Insurance Co., 69 Texas, 353; Whitesides v. Supreme Conclave, 82 Fed. Rep., 275; Order of Columbus v. Fuqua, 60 S. W. Rep., 1020.)

Appellant argues that the law applicable to agents of ordinary life insurance companies does not apply to the acts of subordinate officers of a mutual life insurance society, and that such officer can not waive the regulations of the order which relate to the substance of the contract. This argument is answered by the opinion in the case of Knights of Pythias v. Bridges, supra, wherein it is held that "the inferior lodges and their officers, acting within the scope of their authority, are the agents of the order, and that their knowledge of facts affecting their duties would be notice to the Supreme Lodge of such facts, as in the case of agents of ordinary insurance companies."

The trial court instructed the jury substantially in accordance with the principles above announced. The charge is complained of in appellant's fourteenth, fifteenth, sixteenth and eighteenth assignments of error, which assignments are overruled. Nor did the court err in refusing the appellant's special charges, the refusal of which is complained of in the ninth, tenth, eleventh and twelfth assignments.

2. It is insisted that the court erred in excluding from the jury part of the answer of the witness J. F. Yates, in response to the following interrogatory: "When did you first learn of the condition that existed with reference to the alleged delivery of this certificate, at the time of the alleged delivery, with respect to the health at that time of the said Raymond L. Carrington, and to whom the alleged delivery of said certificate was made? If you did learn with reference thereto, state what you did upon receiving such information. What was done, if anything, with reference to any sum of money that may have been paid upon such certificate? At the time any such sums were received by you, state what knowledge as to the health of the said Carrington, as to the circumstances under which the alleged delivery was made." To this question the witness answered in part: "The first intimation received by the defendant, *or any one of the officers of the defendant, or the alleged de-*

*livery of said certificate, with respect to the health of Carrington at the time,* and as to whom the alleged delivery was made, was received in November, 1902." The court sustained the exception to that part of the answer underscored on the ground that it was the conclusion of the witness. To this ruling appellant excepted. Eliminating the part of the sentence excluded, the part admitted reads: "The first intimation received by the defendant as to whom the alleged delivery of the certificate was made was received in November, 1902." It seems clear that, insofar as the witness answered as to the knowledge of other officers of the association, his answer was hearsay and the conclusion of the witness. The witness did testify, in answer to another interrogatory, that he had no knowledge, and believed none of the sovereign officers of defendant had any knowledge, of the condition that existed with reference to the certificate at the time it is alleged to have been received. His answers further showed that he had no information as to the health of Carrington at the time of the delivery. There was no error in the court's action in excluding the testimony.

3. While the witness Jetton was on the stand in behalf of the plaintiff counsel asked witness who delivered to him his brother's policy. Counsel for defendant objected to his answer for the reason that it was an attempt to bind the company by the action of Traylor, clerk of the camp, in an entirely different, separate transaction, at a different time and date; it is irrelevant without the knowledge and consent of defendant. The court overruled defendant's objection, and the witness answered that M. A. Traylor delivered his (witness' brother's policy) to him (the witness), and he (witness) signed the acceptance slip for his brother, and signed the policy for his brother, and that Traylor delivered the policy to him.

The witness C. B. Jetton had testified that he was a member of Willow Camp No. 86, and had a brother who joined the camp after the witness did; that he, witness, received his brother's policy and signed the acceptance slip for him. This evidence was admissible as a circumstance tending to show that M. A. Traylor, clerk of the local camp, was authorized to deliver policies in a manner different from that prescribed in the by-laws.

4. Error is assigned to the action of the court in permitting plaintiff's witness, M. L. Wigginton, to answer the following question: "Are you acquainted with the financial condition of the Woodmen of the World?" The witness answered that he was; that he received monthly a statement sent out from headquarters of the Woodmen of the World, giving the status of the various funds, including the beneficiary funds, and that this statement showed that at the time of this trial the Sovereign Camp of the Woodmen of the World had a beneficiary fund of about one million and a half dollars; that at the time Carrington joined the camp its membership was more than three hundred thousand (300,000), and its beneficiary fund was in proportion; that the monthly payments received from members was about $500,000. The objection was that the evidence was immaterial and irrelevant. The beneficiary certificate sued on provided: "That the payment of the certificate, or any part thereof, will be based upon one assessment on the entire beneficiary membership of this order in good standing, the full amount when

so paid in no case to exceed the amount of one assessment," etc. The testimony of Wigginton was material to show that one assessment of the membership was sufficient to raise the amount called for by the policy.

5. It is insisted under proper assignment that the verdict of the jury in finding, and the judgment of the court in decreeing in appellee's favor for twelve percent damages, and for attorney's fees under the certificate sued on, are contrary to law, and that no such recovery can be had against appellant for that it is a mutual benefit association. This insistence must be sustained. The appellant, not being a life or health insurance company, was not liable for the penalty imposed by article 3071 of the Revised Statutes. Article 3092 expressly provides that the provisions of this chapter (the chapter relating to insurance) shall in no wise apply to mutual benefit organizations doing business in this State through lodges or councils. The appellant is a mutual benefit society, and does business through local camps, and is not included in the statute. (American Legion of Honor v. Story, 97 Texas, 264; Legion of Honor v. Larmour, 81 Texas, 71.)

It follows that the trial court erred in rendering judgment for twelve percent damages and the attorneys' fees. As this amount is shown by the record, the judgment will be reformed, and said sums deducted, and judgment rendered for appellee for the amount of the verdict less these sums.

*Reformed and rendered.*