**FORT WORTH MUT. BENEV. ASS'N OF TEXAS v. MILLER. (No. 11331.)** *

(Court of Civil Appeals of Texas. Fort Worth. Jan. 2, 1926. Rehearing Denied Feb. 6, 1926.)

**1. Insurance ⬅➡726.**

A benefit certificate must be construed more strongly against association.

**2. Insurance ⬅➡724(1).**

Beneficial association may waive provision that certificate must be countersigned in ink by person in whose name it was written.

**3. Pleading ⬅➡49 — Improper designation of good plea as one of estoppel held immaterial.**

In action on beneficial certificate, where plaintiff pleaded facts which fully met requirements of waiver of certificate provision by defendant, improper designation of plea as one of estoppel was immaterial.

**4. Insurance ⬅➡819(3)—Evidence held to authorize finding of waiver by beneficial association of provision that certificate to be valid must be countersigned.**

In action on benefit certificate, evidence *held* to authorize finding of waiver of provision that certificate, to be valid, must be countersigned in ink by the person in whose name it was written.

**5. Insurance ⬅➡787—Death from bursting of artery in head, caused by bodily exertion, held to have been caused by "accidental means" within benefit certificate (quoting Words and Phrases, "Means").**

Where the immediate cause of death of certificate holder was the bursting of a blood vessel in the head and not the pushing of an automobile, her death was caused by "accidental means" within beneficial certificate, since the agency which produced it was the rupture of a blood vessel, and was wholly unexpected (quoting Words and Phrases, "Means").

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by J. B. Miller against the Fort Worth Mutual Benevolent Association. Judgment for plaintiff, and defendant appeals. Judgment affirmed, less excess interest adjudged.

S. E. Fish, of Amarillo, for appellant.

E. E. Fischer and T. F. Hunter, both of Wichita Falls, for appellee.

CONNER, C. J. The appellee, J. B. Miller, instituted this suit upon a benefit certificate issued to his deceased wife by the appellant, the Fort Worth Mutual Benevolent Association of Texas. It was alleged and the facts show that the appellant association is duly incorporated under the laws of this state, and on the 9th day of July, 1923, issued a certificate to Malinda E. Miller, wife of appellee, the parts of which material to an understanding of our disposition of the case are as follows:

"(3) That said member agrees to the stipulations herein that this certificate shall only bind the Mutual Benevolent Association to pay to the order of John B. Miller (husband) or heirs, the sum of $1 for each member in good standing at the time of his or her death, said amount not to exceed $1,500, should he or she die in good standing in the Mutual Benevolent Association (other than accidental death).

"Should any member lose his or her life by accidental means only, the holder hereof agrees to pay $2.20 upon proper proof of same. * * *

"The Mutual Benevolent Association agrees to pay to any member who loses their life by accidental means only (excepting suicide, sane or insane) $2 from each member in good standing, not to exceed the sum of $3,000. * * * .

"Important notice: This certificate is not valid until countersigned in ink by the person in whose name it is written. All claims under this certificate, to be binding on the Mutual Benevolent Association, must be made in writing within 10 days from date of death of any member, as the claims are paid in the order in which they are received."

[1, 2] Appellee failed to allege, and did not prove, that he had requested the association to assess the members of the order in the class in which Mrs. Miller belonged, or that in fact the certificate had been actually delivered to Mrs. Miller and signed by her, and by demurrer and otherwise it was and is urged that the certificate never became effective. Appellee, in reply, pleaded and proved, successfully we think, that the obligatory clauses of the certificate were not dependent upon a request of the appellee that an assessment upon the members should be made, and that the provisions requiring the certificate to be countersigned in ink in whose name it was written had been waived. The certificate, treated as a contract, as it must be, is, according to our well-settled rules, to be construed more strongly against appellant, and a reading of the obligatory clauses of the certificate, which we have quoted, seems to make it quite plain that appellant's promise, in case of death of the certificate holder, was an absolute promise to pay $1 for each member of the association in good standing, or, in case the certificate holder lost her life "by accidental means only," to pay $2 for each member in good standing, not to exceed the sum of $3,000, thus leading to the conclusion that under its rules and by-laws it would by its assessments provide a beneficiary fund out of which sustained losses might be paid. Moreover, by both pleading and proof it was made to appear that shortly prior to the death of Mrs. Miller, which occurred on or about the 28th day of July, 1923, and after the receipt of her application, all dues therefor having been paid, the association issued to Mrs. Miller the certificate upon which the suit is founded, inclosed the same in an envelope duly directed to her post office, but which in some way was not delivered but re-

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 31, 1926.

turned to the office of the association. It was alleged and shown that it was the custom of the company to so issue and direct certificates, that other certificates had been issued and recognized as valid that had not been signed in ink by the holders, and that this particular provision of the certificate was not observed by the company.

It was further shown that, by letters written from the office of the association after the death of Mrs. Miller the certificate was recognized as valid; the association going so far as to execute and tender to appellee for acceptance its draft for $824, which was $1 for each of the members of the association shown to be in good standing. That waivers of the character indicated may be made and are operative, we think must be accepted without extended discussion. See Calhoun v. Maccabees (Tex. Com. App.) 241 S. W. 101; Sov. Camp, W. O. W., v. Carrington, 90 S. W. 921, 41 Tex. Civ. App. 29.

[3, 4] Appellee's pleading, setting up waiver, was designated "estoppel," and appellant, by demurrer and otherwise, objected that the facts failed to show that appellee had suffered loss and hence that there could be no estoppel, but the pleader pleaded the facts which in our judgment fully met the requirements of a waiver, and the improper designation of the plea as one of estoppel we think immaterial. In answer to the evidence establishing waiver, proof was also offered by an officer of the association that at the time of the letters written to appellee's counsel, and at the time of the issuance of the draft in favor of appellee referred to, he was without knowledge that the certificate had never been delivered and had been returned to the association, where he found it among its files, but as to this we think the court was a proper judge of the credibility of this witness and the weight to be given to his testimony, and the court's findings, which must be imputed to the judgment in appellee's favor on this issue, must be sustained. We accordingly think, for the reasons indicated, that we must proceed upon the theory and finding that the certificate declared upon was valid and operative.

We have thus briefly disposed of the foregoing questions, because we think it apparent from the entire record that the real question presented on this appeal is whether the court's judgment, allowing appellee the double recovery on the certificate under consideration, may be upheld.

[5] Briefly stated, the evidence shows that Mrs. Miller and others traveling in an auto were ferried over a stream, and that the propelling power of the auto was not sufficient to move the car from the boat up the sandy bank of the stream they had crossed, and that Mrs. Miller, together with others, undertook and did, by pushing, propel the car up the bank. The evidence shows or tends to show, and the court evidently so found, that Mrs. Miller exerted her full strength, and that before, or shortly after, the car had been propelled up the bank Mrs. Miller sat down and complained of a pain in her head, her statement being to the effect that she thought she had bursted something in her head; and the evidence shows that she thereafter died from the effects of a bursted artery in the brain. The vital question presented, therefore, is whether Mrs. Miller lost her life "by accidental means only," within the meaning of the terms of the policy. Appellant cites numerous cases in aid of its contention that her death was not so caused. But it seems difficult to harmonize all the cases on the subject. In the case of Bertha Feder v. Iowa State Traveling Men's Association, 78 N. W. 252, 107 Iowa, 538, 43 L. R. A. 693, 70 Am. St. Rep. 212, it appears that the policy or certificate holder, in an effort to close the shutter of a window, stood on his toes and reached over a chair towards the shutters, and, as he did so, blood began to flow from his mouth. He was placed on a lounge, and died within a few minutes. The cause of his death was hemorrhage from a ruptured artery, and the evidence would have authorized the conclusion that the rupture of the artery was not due to the disease from which he was suffering. There was no evidence that he fell, slipped, lost his balance, failed to catch the shutter when he reached for it, or that it moved at his touch more or less readily than he had expected it would move; in other words, there is no evidence whatever that anything was done or occurred which he had not foreseen and planned, excepting the rupture of the artery, and the consequences which resulted from it. The certificate upon which the suit by the beneficiary was founded provided payment "whenever the death of a member of this association in good standing shall occur from any accidental cause," etc. The trial court gave a peremptory instruction to the jury to find for the defendant association, and this instruction was approved by the appellate court of Iowa, which rendered the decision.

In the case of Order of United Commercial Travelers of America v. Dobbs (Tex. Civ. App.) 204 S. W. 468, it appears that the plaintiff held a certificate in the order providing for payment of loss for injury caused by accident, and the evidence showed that the plaintiff was watering his flowers and garden plants as was his custom when at home, and while so doing his feet became entangled in a water hose, and, in attempting to straighten out said hose, plaintiff tripped himself and was thrown to the ground; that as a result of the fall plaintiff's head struck the ground or other hard substance with great violence, causing an external and visible mark of injury; the blow on his head ruptured a blood vessel in his brain, causing a cerebral hemorrhage; the cerebral hemorrhage was caused by said accident alone and

independently of all other causes; the cerebral hemorrhage caused the plaintiff to be partially paralyzed and otherwise incapacitated him so that was totally disabled for a period of eight weeks and five days. The Dallas Court of Civil Appeals finally reversed the judgment of the trial court in favor of the plaintiff, and rendered it in favor of the order named. But it will appear from the opinion that the certificate in that case specifically provided that its benefits should not cover or extend, among other things, to "cerebral hemorrhage."

In the case of Pledger v. Business Men's Acc. Ass'n. of Texas, 197 S. W. 889, by the Austin Court of Civil Appeals, it appears that Beauregard Pledger held a benefit certificate in the association, and that his death was occasioned by lifting a cotton bale which caused him to suffer a rupture of his heart or heart vessels, causing death. The certificate upon which the suit was founded by Pledger's wife, the beneficiary, provided for payment of $5,000 "in the case of accidental death" of a member. She recovered, but the Court of Civil Appeals on original hearing reversed and remanded the case. The court, however, on motion for rehearing, gave effect to a by-law, which provided for payment in case the death of the certificate holder was produced by "accidental means," and affirmed the judgment of the trial court in favor of the beneficiary. See 198 S. W. 810. The case, however, was reviewed on writ of error by Section A of our Commission of Appeals. See 228 S. W. 110. It was said, in the opinion by Justice Taylor of the Commission, approved by the Supreme Court, that:

"The by-laws provide for payment of $5,000 for the death of the member caused 'solely and exclusively by external, violent, and accidental means.' Mrs. Pledger sought recovery on two theories, to wit: (1) On account of the accidental death of Pledger; and (2) on account of his death caused solely and exclusively by accidental means. The association defended principally on the ground that the contingency insured against was death resulting from accidental means solely and exclusively; that Pledger's death did not result from accidental means, and certainly not from such means solely and exclusively."

After considering the effect of the by-laws discussed in the opinion of the Court of Appeals, the Commission further said:

"Viewing the contract of insurance as a whole, the association's liability in this case was for the accidental death of Pledger. Under the rule stated in the Bryant Case, supra, Pledger's death was caused by accidental means. It follows that his death was accidental, and it was so found to be by the Court of Civil Appeals. Judgment should have been rendered by the trial court on the findings of the jury in favor of defendant in error."

It will be observed that the contract of insurance construed in the Pledger Case provided for an "accidental death," and that the court further said that a "death caused by accidental means is an accidental death; but an accidental death may or may not be the result of accidental means."

It thus appears that the terms governing a death by "accidental means" is a limitation and not an enlargement of the policy. An "accidental death" may arise from any unexpected external violent happening, but a death by accidental means, while classed as accidental, is a death caused by means that are accidental. While the distinction may not be very clear, this at least seems to be the doctrine of the Pledger Case and of the other cases upon which the distinction has been made to rest.

In 5 Words and Phrases, we find the following definition:

" 'Means,' as used in a life policy insuring against death by violent and accidental means, denotes that which produces a result, and is synonymous with 'cause.' Tucker v. Mutual Ben. Life Ins. Co., 4 N. Y. S. 505, 506, 50 Hun, 50."

In Black's Law Dictionary (2d Ed.) the term "means" is defined as "the instrument or agency through which an end or purpose is accomplished."

It may be said that the death of Mrs. Miller falls within the definitions from Words and Phrases and from Black's Dictionary, above given, in that the thing or cause or agency which produced her death was the rupture of the blood vessel in her brain, and that, while her act in pushing the car was voluntary, the result was wholly unexpected. And this conclusion seems to accord with the decision of Chief Justice Phillips in the case of Bryant v. Continental Casualty Co., 182 S. W. 673, 107 Tex. 582, L. R. A. 1916E, 945, Ann. Cas. 1918A, 517. In the course of the opinion the Chief Justice had this, among other things, to say:

"The word 'means' is employed in the policy in the sense of 'cause'; the phrase 'due to accidental means' is one of qualification; and the purpose of its use in the ordinary accident policy is to limit the liability of the insurer to injuries effected by an accidental cause, as distinguished from those which are merely accidental in their result. It is generally recognized, as it should be, that, where a man undertakes to do a certain thing by a particular means, and the result of his act is such as follows, in not an unusual or unexpected way, from the means voluntarily used, it cannot be said to be due to an accidental cause, though, in the sense that it was not intended, an accidental result is the consequence. In the numerous adjudicated cases upon the subject, therefore, it is determined that where, by the terms of the contract, the risk insured against is an injury effected by 'accidental means,' the element of accident must consist in that which produces the injury, rather than in the mere fact that an injury occurs. The rule itself is well established. It is its application to the varying kinds of accidental injuries which is sometimes involved in difficulty, occasioning, in

some instances, divergent opinions by the courts."

In that case, as in this, by the terms of the contract, the risk insured against was not a death by accident in its larger sense, but a death caused by "accidental means." In that case Calvin R. Perry, the holder of the policy, while walking on the streets of Houston in the ordinary course of his occupation as collector of accounts, suffered a sunstroke, from which he died on the following day. It was contended in behalf of the company that such exposure was incurred vountarily while the insured was in possession of all his faculties; that as a consequence of his voluntary and conscious act, accomplished in precisely the way intended, he suffered a sunstroke, or heat prostration; that while such prostration was unexpected, and therefore accidental in the sense that every disease and every unexpected occurrence is accidental, the means by which the sunstroke was produced were not accidental, since such means were adopted by the insured consciously and voluntarily, and there was no intentional element in the means bringing out the unfortunate result. The discussion of the case and authorities by Chief Justice Phillips is interesting, but we think it will be sufficient to here say of the opinion that the contention of the insurance company was not approved and that, upon the facts stated, the court held that the judgment should have been rendered in the court below and the Court of Civil Appeals for Mrs. Bryant, the beneficiary of the certificate.

In the case Chief Justice Phillips cited with approval and quoted from the case of Mutual Accident Ass'n v. Barry, 9 S. Ct. 755, 131 U. S. 100, 33 L. Ed. 60. In that case, which was by the Supreme Court of the United States, it appeared that the insured, Dr. Barry, with two other physicians had visited a patient living in a house behind a drug store. They came out of the house on a platform, which was between 4 and 5 feet from the ground. By getting down from the platform it was but a short distance to the drug store to which they desired to go. They jumped from the platform to the ground. The other two, who jumped first, alighted safely; but the evidence was that Dr. Barry, though alighting upon his feet, jumped heavily, the sound, as he struck the ground, being as if he had come down solidly on his heels, like an inert body.

Shortly afterwards he appeared ill and vomited, and died 9 days later, having retained nothing on his stomach and having passed nothing but blood and mucus. There was evidence that the cause of his death was a stricture of the duodenum, due, according to the plaintiff's contention, to the jump. The policy declared upon, as in the Bryant Case and in this case, insured against bodily injury "effected through external, violent, and accidental means," and the Supreme Court of the United States, upon the facts above stated, and after a review of a number of authorities, concluded that the judgment of the trial court in favor of the beneficiary should be affirmed. In speaking of the Barry Case in the Bryant Case, Chief Justice Phillips said:

"In the Barry Case, the jump of the assured, which constituted the act immediately preceding his injury and occasioned it, was likewise voluntary and intentional. It was 'the means' of the injury. But the court repudiated the proposition that, because of its having been voluntary, the resulting injury could not be regarded as due to an accident. It was held to have been an accident, notwithstanding the voluntary nature of the act which caused it, for the reason that it was an unforeseen result, following, not naturally from the act, but in an unusual and unexpected way."

While numerous authorities have been examined, and while we have had some difficulty in arriving at a determination, we have finally concluded that, under the authority of the Bryant and Barry Cases, supra, we must repudiate the contention here made, as in the Barry Case, that, because Mrs. Miller voluntarily engaged in the pushing of the car, and because there was nothing unintended or unusual in her acts, therefore her death does not come within the obligatory clauses under consideration. It may be said that the immediate cause of the death was the bursting of the blood vessel and not the pushing of the car; that the result was unintended and unexpected, and hence such as insured against. See, also, the cases of International Travelers' Ass'n v. Branum (Tex. Civ. App.) 169 S. W. 389, and Robinson v. Ætna Life Ins. Co. (Tex. Com. App.) 276 S. W. 900, and cases therein cited.

On the whole, we think, on the authority of the cases last cited, that the judgment below must be affirmed, less $4.35 excess interest adjudged. All other assignments of error are overruled.