## AMERICAN NAT. INS. CO. v. BAILEY.
### (No. 598.)

*Court of Civil Appeals of Texas. Waco.*
Dec. 22, 1927.

Rehearing Denied Feb. 2, 1928.

1. **Insurance** ⬉668(7)—**Whether insured was in good health when life insurance policy was delivered held for jury.**

Whether insured was in good health within terms of life insurance policy requiring that the insured be in good health when policy was delivered *held* question for jury under evidence.

2. **Appeal and error** ⬉1001(1)—**Jury's finding supported by evidence, that insured was in good health when life policy was delivered, held conclusive on appeal.**

Where there was evidence to support jury's finding that insured was in good health when life insurance policy was delivered, finding *held* conclusive on appeal.

3. **Appeal and error** ⬉930(1)—**Appellate court will view evidence in light most favorable to jury's finding.**

In passing on sufficiency of evidence to sustain jury's finding, appellate court will view evidence in light most favorable to finding.

4. **Insurance** ⬉378(1)—**Where life insurance agent had duty of investigating health of insured, company held chargeable with information acquired by agent.**

Where life insurance agent had duty of investigating and reporting on the health of the insured and certifying that applicant was good risk, company *held* chargeable with whatever information agent acquired by investigation.

5. **Principal and agent** ⬉178(1)—**Notice to agent concerning matter within scope of his authority is notice to principal.**

Notice to an agent when acting within the scope of his authority and in reference to a matter over which his authority extends is notice to the principal.

6. **Principal and agent** ⬉177(1)—**Agent's knowledge is imputed to principal.**

Law presumes that agent performs his duty to disclose to his principal all notice or knowledge which he may possess and which is necessary for principal's protection or guidance, and imputes to principal whatever notice or knowledge agent then possessed, whether he has in fact disclosed it or not.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Insurance ⊜⟞665(8)—Evidence held to support finding that insurance agent knew true facts concerning insured's health when policy was delivered.**

In suit on life insurance policy, evidence *held* sufficient to support finding that agent who delivered policy knew the true facts concerning insured's health at the time he delivered the policy.

**8. Insurance ⊜⟞376(1), 392(1)—Where insurance agent knew true facts concerning insured's health, and premiums were collected until insured's death, provision that insured must be in good health when policy was delivered held waived notwithstanding policy prohibited agent from waiving any provision.**

Where insurance agent knew true facts concerning insured's health at time he delivered life insurance policy, and it was his duty to report such facts to the company, and premiums were collected on the policy until insured's death, company *held* to have waived provision that the insured must be in good health when the policy was delivered, notwithstanding provision in the policy that agent was prohibited from waiving any of its provisions.

**9. Insurance ⊜⟞371—As respects forfeiture, good faith of insurer is required.**

As respects forfeiture, contract of insurance requires good faith on part of insurer as well as the insured.

**10. Insurance ⊜⟞602—$350 attorney's fee for suing on life policy held excessive by $50 under evidence.**

Where attorney testified in insurance case that reasonable attorney's fee would be from $250 to $300, and another placed reasonable fee at from $150 to $200, jury's verdict awarding $350 *held* excessive by $50.

Appeal from District Court, McLennan County; Sam R. Scott, Judge.

Suit by Mrs. Kittie Bailey against the American National Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed on condition.

Williams, Williams, McClellan & Lincoln, of Waco, for appellant.

Jos. W. Hale, of Waco, for appellee.

STANFORD, J. Suit by appellee against appellant on a life insurance policy for $504, issued and delivered on May 18, 1925, to her husband, J. E. Bailey, who died October 22, 1925. Proof of death and formal demand for payment were duly made, and appellant denied liability, after which suit was filed for the amount of said policy, including interest, penalties, and attorney's fees. For its principal defense, appellant pleaded a clause of its policy, providing, in effect, that such policy should not take effect, unless the assured was in good health at the time of its delivery, and alleged that at said time the assured was not in good health, and so said policy never became effective. Appellee replied to the effect that the assured was in

good health, within the meaning of said policy, at the time the policy was issued and delivered; but, if he was not, appellant, with full knowledge of the true condition of the assured's health, issued and delivered said policy, and collected the premiums on same up to the time of the assured's death, and by so doing waived the question sought to be raised and is estopped to assert same. In response to special issues, the jury found:

"(1) J. E. Bailey, the deceased, was in sound health on May 18, 1925, the date upon which the policy was issued and delivered.

"(2) J. E. Bridges did have authority to solicit insurance and to deliver policies when issued, and to collect premiums thereon for the defendant company, from May 7, 1925, to August 31, 1925.

"(3) J. E. Bridges did solicit the insurance from J. E. Bailey, the deceased, and did deliver to him the policy issued by the defendant company, and did receive the premiums paid thereon by said Bailey from May 18, 1925, to August 31, 1925.

"(4) J. E. Bridges, at the time he delivered the policy in question to J. E. Bailey, did have knowledge of the true facts relative to the health of said Bailey on said date.

"(5) A reasonable attorney's fee for the prosecution of plaintiff's claim in this case is $350."

On these findings and such other findings as the court was authorized by the pleadings and evidence to make, the court entered judgment for appellee. Appellant has duly appealed and presents the record here for review.

[1-3] Under several assignments and propositions, appellant contends that the trial court erred in refusing to instruct a verdict in its favor. Under other assignments, it contends the evidence is insufficient to sustain the first and fourth findings of the jury. Appellant urged as a special defense that the assured was not in sound health on May 18, 1925, the date on which the policy was delivered to him. Appellee pleaded a general denial, and specially alleged that the assured on said date was in sound health within the meaning and intention of the parties to said insurance contract. The jury found that, at the time said policy was delivered on May 18, 1925, the assured was in sound health. Is there evidence to sustain this finding?

The only witnesses who testified as to the assured's health were Drs. Dudgeon, Collins, and Johnson, and appellee. Drs. Dudgeon and Collins operated on the assured in July, 1924, for a liver trouble, and testified, in substance, that they found his abdomen full of fluid, his liver contracted; that he was suffering with what is known to the medical profession as cirrhosis of the liver; that it was a serious disease, and would tend to shorten life; that the assured had what was technically known as ascites, which means fluid in the abdominal cavity, and which requires tapping from time to time to take

⊜⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

such fluid out; that said operation was performed with the hope that it would do him good, and was highly successful, and that they did fix him up, so that he went on about his business, and, after he was discharged from the hospital, he never came back but once or twice, and they never saw him any more. Dr. Johnson testified by deposition, and, in answer to cross-interrogatories, said, in effect, that he attended the assured during his last illness; that he never saw the assured but twice, the first time in his office, and a few days later he was called to his residence, and saw him about 30 minutes before he died October 22, 1925; that he did not know whether some previous disease or ailment caused his death or not. All three of these physicians testified, in substance, that one's ability to perform manual labor, to sleep well at night, have a good appetite, being of normal weight, are all indications of good health.

Appellee testified, in substance, that her husband, the assured, was alive and in good health on May 18, 1925; that his physical appearance about said date was that of a man in sound health; that, so far as she could tell, there was no difference in his appearance at that time and what it had been ever since they were married; that he ate heartily, just like he had always done; that he slept well, as he usually did; that his weight was about the same at that time as it had been ever since they were married; that there was a time after his operation in 1924 that his health was not good, and he did not eat or sleep well, but, after he got over his operation, he seemed to be all right; that he was driving and operating a Ford truck for hire along about May 18, 1925; that during the six months prior to that time he had worked some at the carpenter trade, had built a house for Dr. Buie of Marlin, Tex.; that he had also worked on public work at Mart, Tex., in fact, he did anything he could find to do; that after that date he continued to operate the truck "until we came to Oklahoma, and while here he picked cotton with the rest of the family. He was in good health on May 18, 1925, and had on that day delivered an automobile truck load of sheep to Fort Worth, about 150 miles away. He helped to load and unload them, and he returned from Fort Worth about 4 o'clock in the afternoon of that day. Mr. Bridges was at the house when he came in and delivered the policy to Mr. Bailey at that time. He was in sound health on May 18, 1925." The operation was in July, 1924. Neither one of the doctors had seen the assured for eight or nine months.

We have not undertaken to set out all of the evidence bearing upon the issue here involved, but enough to show such question was one of fact for the jury. The jury having resolved said issue of fact in favor of appellee, and there being evidence to support

such finding, we think this court should not interfere. In passing upon the sufficiency of the evidence to sustain this finding of the jury, we must view the same in the light most favorable to such finding. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696. The court was correct in refusing to instruct for appellant, and we think this is true, even if the evidence had not been sufficient to sustain the finding of the jury to the effect that the assured was in sound health at the time the policy was delivered, May 18, 1925, for the following reason: Appellee pleaded that, if the assured was not in sound health at the time the policy was issued and delivered, appellant at said time knew said fact, and, so knowing issued and delivered said policy, and collected the premiums up to the date of the death of the assured, and by so doing waived the condition in its policy providing same should not be effective unless the assured was in sound health at the time of its delivery, and that appellant was estopped to rely upon such provision. As above stated, in response to the fourth special issue, the jury found:

"J. E. Bridges, at the time he delivered the policy in question to J. E. Bailey, the deceased, and at the time he received the premiums subsequently paid by Bailey to him, did have knowledge of the true facts relative to the health of said Bailey on said dates."

Is there evidence to support this finding? Appellee testified as follows:

"The policy in question was issued by the company * * * on May 18, 1925, and it was delivered by Mr. J. E. Bridges, the insurance agent, to my husband * * * at our home in the town of Mart. I know Mr. J. E. Bridges. He is or was the agent for the insurance company in selling my husband the policy of insurance. He sold the policy to Mr. Bailey, took the money for it, and then later he was the man that delivered it. * * * I heard several conversations between Mr. Bridges and Mr. Bailey. Mr. Bridges had seen Mr. Bailey several times, and had tried to sell him a policy, and Mr. Bailey told him he would take a policy for $1,000. Then Mr. Bridges asked Mr. Bailey if he had been sick at any time during the last three years. Mr. Bailey replied, 'Yes,' that he had been operated on in July, 1924. Mr. Bridges then said that he could only write the policy for $504 until a year had expired since the operation, without having a medical examination. * * * I was present when Mr. Bridges wrote up the application policy, and heard the conversation between him and Mr. Bailey, in which Mr. Bailey told Mr. Bridges of an operation which he had had performed in 1924, and Mr. Bailey also told Mr. Bridges of having had his abdomen tapped on two or three occasions within the first 60 days after July 23, 1924, that being the date Mr. Bailey left the hospital. * * * My husband wanted to take a policy for $1,000, Mr. Bridges asked him if he had been sick at any time during the last three years, and my husband told Mr. Bridges that he had been operated on in July, 1924. I heard my husband tell Mr. Bridges that he was operated

on in the Baptist Sanitarium in Waco by Dr. Dudgeon for liver trouble. Mr. Bridges then told Mr. Bailey that on account of this operation the company would not let him have $1,000 worth of insurance, and that $504 was the largest amount of insurance he could write under those conditions. This conversation occurred at our home when Mr. Bridges was selling Mr. Bailey this policy of insurance."

J. E. Bridges did not testify, and there is no evidence in the record controverting the above evidence of appellee. An instruction book of appellant was admitted in evidence, and it was admitted by appellant that it contained substantially the instructions which were given by appellant to its agent J. E. Bridges, the eleventh section of which is as follows:

"*Form of Application*—In writing applications, it puts upon the agent a grave responsibility, namely, the responsibility of seeing that the company does not have fostered upon it bad risks, and of satisfying himself by diligent inquiry that the risk is sound. If it is found that the agents do not treat applications fairly, do not ask questions, or fail to record the answers in the blank space provided, the company will claim the protection of the law and prosecute the agents.

"*Penalty for Crooked Work*—An agent recommending an improper risk for acceptance will be dismissed. * * *

"*Delivering Policies*—Deliver no policy without seeing the policyholder and satisfying yourself that the risk is in sound health. If appearance is not satisfactory, send the policy back to the company, stating the cause, and await further instructions."

The assured signed a written application for the policy, but same was not attached to the policy, but appellant, in cross-interrogatories to appellee, attached as an exhibit a photostatic copy of said application, which was in part as follows:

"*Agent's Certificate. Notice*—This certificate must in all cases be signed by the agent after the above questions are all answered, and he has become satisfied that the life proposed is a first class risk.

"Is this applicant a relative of yours? No.

"What amount of premiums have you collected in advance? $1.20.

"I certify that I have this 7th day of May, 1925, personally seen and questioned the applicant herein named, and I recommend the company to accept the risk.

"J. E. Bridges, Agent."

R. L. Fickes, district superintendent of appellant, testified that J. E. Bridges was a duly authorized agent for appellant, and that the said Bridges did solicit the policy in question, and did deliver same to J. E. Bailey and collect the premiums on same, and further:

"Mr. Bridges was instructed by the company, in soliciting applications for policies of insurance, to question the applicant for insurance with reference to his condition of health. We place in the application, in the printed face of the application, a certificate for the agent, and

we did for Mr. Bridges, to sign, either recommending or rejecting the risk. We consider and give due consideration to the agent's recommendation in that respect."

[4, 5] There can be no doubt from the above uncontroverted evidence that the appellant delegated to its agent Bridges, not only the duty of soliciting applications for policies, delivering policies, and collecting premiums thereon, but also of investigating fully the condition of the health of the assured at the time the application is taken and at the time the policy is delivered. The book of instructions to agents recites:

"In writing applications it puts upon agents a grave responsibility, namely, the responsibility of seeing that the company does not have fostered upon it bad risks, and of satisfying yourself by diligent inquiry that the risk is sound. If it is found that agents do not ask questions, or fail to record the answers in the blank space provided, the company will claim the protection of the law and prosecute the agents. * * * An agent recommending an improper risk will be dismissed. * * * Deliver no policy without seeing the policyholder and satisfying yourself that the risk is in sound health."

The agent Bridges was required to, and did, attach the following certificate to the application:

"I certify that I have this 7th day of May, 1925, personally seen and questioned the applicant herein named, and I recommend the company to accept the risk.

"J. E. Bridges, Agent."

[6] This duty of investigating and reporting upon the health of the assured being placed upon the agent Bridges, by the appellant, it was chargeable with knowledge of whatever information its agent acquired in the performance of such duties. It is a general rule of law, well settled in this state, that notice to an agent when acting within the scope of his authority, and in reference to a matter over which his authority extends, is notice to the principal. This rule rests upon the principle that it is the duty of the agent to disclose to his principal all notice or knowledge which he may possess, and which is necessary for the principal's protection or guidance. This duty the law presumes the agent to have performed, and imputes to the principal whatever notice or knowledge the agent then possessed, whether he has in fact disclosed it or not. Texas Loan Agency v. Taylor et al., 88 Tex. 47, 29 S. W. 1057; Missouri, K. & T. Railway Co. v. McFadden, 89 Tex. 138, 33 S. W. 853; Northwestern Mut. Life Ins. Co. v. Freeman, 19 Tex. Civ. App. 632, 47 S. W. 1025; Mechem on Agency, §§ 718, 719.

[7, 8] There can be no doubt but that, at the time the agent, Bridges, took the application for the policy in question on May 7, 1925, he (Bridges) knew that Dr. Dudgeon, in July, 1924, had performed an operation at the Baptist Sanitarium on the assured for

liver trouble, and that during the 60 days following July 23, 1924, the date the assured left the hospital, Dr. Dudgeon tapped his abdomen two or three times to relieve him of accumulated fluid, for appellee testified that the assured so told the agent Bridges, and there is no evidence to the contrary.

Appellee also testified that the agent Bridges, in an effort to sell the assured, her husband, said insurance, had several conversations, and her husband told him fully about his liver trouble, the operation, etc. If the agent Bridges did his duty, and the presumption is he did, he incorporated all the above information as to the health of the assured in the application, and the executive officers of appellant had same before them at the time they executed the policy and sent same to Bridges for delivery; but, as appellant did not see fit to attach said application to the policy, or in any manner make same a part of the insurance contract, we cannot know whether or not appellant thus had actual knowledge of what its said agent knew as to the condition of assured's health, but this is immaterial. The law charges appellant with knowledge of what its said agent learned in performing his duties as such agent, whether he disclosed same to his principal or not.

So the finding of the jury to the effect that J. E. Bridges, at the time he delivered the policy in question to J. E. Bailey, the deceased, and at the time he received the premiums subsequently paid by Bailey to him, did have knowledge of the true facts relative to the health of the said Bailey on said dates, is amply supported by the evidence, and it necessarily follows, under the uncontroverted facts in this case, that appellant, through its said agent, on said dates had knowledge of the true facts relative to the health of the assured. It is true the policy prohibited the agent Bridges from waiving any provision of the policy, but appellant is a corporation, and can act only through its officers and agents, and any officer or agent empowered to act for it in respect to a particular matter is the representative of the company in that behalf, and his acts, done within the scope of his powers, are binding upon the company. If Bridges had been a mere clerk, with no duty but to deliver the policy, and had no discretion in the matter of delivery, a different question would be presented, but the duty rested upon him, not only to deliver the policy and collect the premiums, but to satisfy himself the assured was in good health, and, if not satisfied as to assured's health, to withhold delivery, etc. We think the act of Bridges in delivering was the act of the company, and his doing so with knowledge of the true condition of the assured's health, if he was not in good health, was a waiver of said good health clause. Northwestern Life Ass'n v. Findley, 29 Tex. Civ. App. 494, 68 S. W. 695; Washington Life

Ins. Co. v. Berwald (Tex. Civ. App.) 72 S. W. 436; Sovereign Camp, W. O. W., v. Carrington, 41 Tex. Civ. App. 29, 90 S. W. 921; North American Accident Ins. Co. v. Bowen (Tex. Civ. App.) 102 S. W. 168; Modern Woodmen v. Owens, 60 Tex. Civ. App. 398, 130 S. W. 863 (on rehearing); Equitable Life Ins. Co. y. Ellis (Tex. Civ. App.) 137 S. W. 187; Id., 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; Amarillo Nat. Life v. Brown (Tex. Civ. App.) 166 S. W. 664 (on rehearing). But, if the acts of Bridges did not amount to a waiver of said clause, and if he had no such authority, then appellant, the corporation, undoubtedly had such authority.

[9] If the assured, at the time the policy was delivered, was not in good health, but appellant, through its agent Bridges, had knowledge of the true condition of his health, and, with such knowledge, delivered said policy and collected premiums on same up to the date of his death, thereby leading the assured to believe that the policy was valid, and never contending otherwise until after his death, by such conduct appellant itself waived its right to exemption from liability on the ground that assured was not in good health at the time the policy was delivered, and is estopped from making such defense. A contract of insurance requires good faith on the part of the insurer as well as the assured. Sun Life Ins. Co. v. Phillips et al. (Tex. Civ. App.) 70 S. W. 603; Northwestern Mut. Life v. Freeman, 19 Tex. Civ. App. 632, 47 S. W. 1025 (writ refused); First Texas State Ins. Co. v. Capers (Tex. Civ. App.) 183 S. W. 794; Southern Surety Co. v. Butler (Tex. Civ. App.) 247 S. W. 611; American Nat. Ins. Co. v. Stevens (Tex. Civ. App.) 262 S. W. 833; Dossett v. Franklin Life Ins. Co. (Tex. Com. App.) 276 S. W. 1097. We overrule all of these assignments.

[10] Under its third assignment appellant contends, in effect, that the verdict and judgment should be set aside and a new trial awarded because the jury's answer to special issue No. 5 awarding appellee $350 attorney's fee is excessive, and not supported by the evidence. In her pleading appellee sought to recover $400 attorney's fees. On the trial, two practicing attorneys of the Waco bar were called to testify as to what would be a reasonable attorney's fee for the services performed by appellee's counsel in this case, one being called by appellee and the other by appellant. One testified that from $250 to $300 would be a reasonable attorney's fee, and the other placed such reasonable fee at from $150 to $200, including services required to be performed by appellee's counsel on appeal in case an appeal should be taken. The answer of each witness was based on a detailed statement of the nature of the case, the issues involved, the amount of work done, and the amount that would likely be required to be done in case of an appeal, the amount involved, etc. The jury awarded appellee $350 at-

torney's fee. We sustain this assignment. We think the amount awarded is excessive, in that it is not supported by the evidence, for which error the case will have to be reversed, unless appellee will within one week file a remittitur of $50, making the attorney's fee $300, in which event the judgment will be affirmed. We overrule all other assignments.