Missouri, Kansas & Texas Railway Company and Martin, Wise, & Fitzhugh v. McFadden Bros.

No. 366.—Decided January 27, 1896.

1. Claim Against Receiver—Liability of Property or Its Owner.

A receiver is the agent of the court, not of the owner of the property which is placed in his charge, and it is a general rule that the owner is in no manner responsible for the receiver's acts. Recognized exceptions are cases when the order appointing the receiver is void: enforcement of equitable liens arising from the diversion of net earnings, which should have discharged the debt, to placing betterments on the road which is then turned back to the owner without sale; cases where, by order of the court making the sale, claims are given a lien on the corpus of the property in the hands of the purchaser. (P. 144.)

**2.  Same—Presumptions.**

In the absence of evidence, it is to be presumed that the receivers of a railroad were properly appointed, and it can not be held, from the mere fact that upon their discharge the railway company took charge of the property, that it made itself liable either upon their contracts or torts.  (P. 145.)

**3.  Principal Bound by Agent's Acts.**

The receivers of a railway gave to M. W. & F. a bill of lading for a foreign shipment of cotton and delivered it, to be compressed, to McF. Bros., to whom also M. W. & F., the shippers, transferred their bill of lading.  In the confusion incident to a fire which occurred at the compress the cotton was by the agents· of McF. Bros., in charge of their compress, turned over to M. W. & F. who converted it.  In a suit by McF. Bros., against the shippers, the receivers and the railway to recover the value of the cotton, held, that the act of plaintiffs' agent in delivering it to M. W. & F. was the act of plaintiffs and prevented a recovery against the carrier, though such agents did not know at the time that their principals, the plaintiffs, owned the cotton.  Held, also, that McF. Bros. were entitled to recover the value of the cotton from M. W. & F., who had converted it.  (P. 145.)

**4.  Negligence—Proximate Cause.**

Cotton shipped under a contract exempting the carrier from loss by fire except in case of his own negligence was burned at a compress, on the platform of which the carrier had suffered it to remain exposed to danger of fire from passing engines for several days after it was compressed, which act was found to be negligent.  Held, that the danger ought reasonably to have been anticipated under the circumstances, and such negligence must be considered a proximate cause of the destruction of the cotton.  (P. 145.)

ERROR to Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

The suit was brought by McFadden Bros. against Martin, Wise & Fitzhugh and against Eddy & Cross, receivers of the M., K. & T. Ry. Co., which road was also subsequently made a party defendant, to recover the value of certain cotton shipped over the road, while operated by the receivers, by said Martin, Wise & Fitzhugh, and transferred by them after shipment to plaintiffs.  Twenty-five bales were burned while on plaintiffs' compress platform, and eighty-two bales delivered after the fire to Martin,. Wise & Fitzhugh, against whom, as well as the receivers and the railway company, plaintiff had judgment at the trial for the value thereof.  Plaintiffs also recovered, against the railway company only, the value of the twenty-five bales destroyed.

On appeal by both these defendants the judgment was affirmed by the· Court of Civil Appeals and both obtained writs of error.

*George Thompson*, for plaintiff in error, the Missouri, Kansas and Texas Railway Company.—The act passed by the Legislature of the State· of Texas, March 19, 1887, providing that a corporation receiving property from the hands of its receiver without sale upon his discharge shall be liable for the indebtedness of the receiver, can have no application to a proceeding in one of the Circuit Courts of the United States.  Yocum v. Kroeger, 27 S. W. Rep., 953; Fordyce v. DuBose, 26 S. W. Rep., 1050; Howe v. St. Clair, 27 S. W. Rep., 800; Railway v. Wilson, 21 S. W. Rep., 373; Fordyce v. Beecher, 21 S. W. Rep., 179; Hyde v. Stone, 20 How.,

170; Payne v. Hook, 7 Wall., 425; Railway v. Denton, 146 U. S., 202; Railway v. Pinkney, 194 U. S. 699.

If at the time of the loss of the cotton it was in the possession of Mc-Fadden & Bro., and the loss occurred without the fault of the carrier, McFadden & Bro. have no right of action.

Though a carrier may be guilty of delay in the transportation of freight, and during such detention a fire breaks out and destroys same, yet such delay cannot be considered the proximate cause, and the carrier is not liable. Brandon v. Manufacturing Co., 51 Texas, 126; Rozwadosfkic v. Railway, 1 Texas Civ. App., 492; Railway v. Reeves, 10 Wall., 176; Railway v. Ins. Co., 139 U. S., 223; James v. James, 23 S. W. Rep. (Ark.), 1099; Morrison v. Davis, 20 Pa. St., 171; Denny v. Railway, 13 Gray, 481; Hoadley v. Railway, 115 Mass., 304; Daniels v. Ballantine, 23 Ohio St., 532; Railroad v. Burrows, 33 Mich., 6; Dubuque W. & Co. v. Dubuque, 30 Iowa, 176.

The liability of Eddy and Cross as common carriers did not begin until the cotton had actually been received upon their cars and came into their exclusive possession and control. Ins. Co. v. Compress Co., 133 U. S., 387; Railway v. Knight, 122 U. S., 79; Railway v. Ins. Co., 139 U. S., 223; Pollard v. Vinton, 105 U. S., 7; Railway v. Wilkens, 44 Md., 11; Miller v. Railway, 90 N. Y., 430.

The Court of Civil Appeals, in its opinion filed in this case, seems to recognize the ruling made in the case of Fordyce v. Beecher, 21 S. W. Rep., 179, and Fordyce v. Dubose, 87 Texas, 78, but seeks to qualify these decisions to the end that it can be held that, in so far as the receivers act of 1889 attempts to affect receivers appointed by a federal court, it is inapplicable and unenforceable, but that in so far as it may affect the corporation, which necessarily was a party to the suit, and whose property was taken charge of by such receiver, the provisions of the State act did apply and could be enforced. To this holding several objections can be urged:

First: The caption of the act of 1889 shows upon its face that it was intended to apply only to receiverships originating in the State courts, and to fix liability upon the corporation whose line had been taken charge of and operated by a receiver appointed by one of the courts of Texas, and that it was never intended to have any application, in any of its terms, to matters of receivership originating in the federal court.

Second: In Fordyce v. Dubose, 87 Texas, 78, Judge Brown in express terms holds that the act was not intended to affect the procedure of federal courts as to receivers appointed by such courts; and it certainly would be a forced construction to say that the act in question was never intended to affect one part of the procedure in the federal court, but was intended to affect and does apply to others. The only fair construction of the act is that it was intended to apply to and affect only such receiverships as may have originated in the courts of the State of Texas, and to fix liability upon such corporations as may have received their property back under the orders of such courts.

Third: The conclusion of the Court of Civil Appeals, that the act was applicable and enforceable in so far as it authorized a judgment against a corporation, for the reason that it does not affect the jurisdiction of the court appointing the receiver, was erroneous for the reason that such a holding would affect and control the procedure of a federal court in the matter of receiverships which might therein be pending. In other words, the result of this holding is to say that you can appoint your receiver, who may incur liability; that you may discharge him at any time you may see fit, and the State courts have no right to continue any suit against him after such discharge; but you cannot pass any order which might prevent the State courts from declaring, ipso facto, the corporation liable for the acts of the receiver. The effect of such a ruling would be to prescribe the conditions upon which the federal court could discharge its receiver, and limit and restrict its powers in the winding up of such receiverships. There is no complaint in this record that the receiver was improperly appointed, or that the corporation had anything to do with the appointment of such receiver. Neither is there any contention that the receiver was discharged at the instance of the corporation, or bound itself by any agreement to assume the liabilities of the receiver. Neither is there any claim or testimony to show that while the receiver was operating the road one cent of the earnings went to the use and benefit of the road. From the agreement of facts entered into, the presumption is that, when the court discharged the receiver and directed the property to be returned to the owner, ample funds had been prepared to protect all parties to whom the receiver might be liable; and in the absence of some showing that the corporation assumed the liabilities of the receiver, or took the road with the earnings having been expended upon it, no liability could be fastened by the mere fact of its taking the property back under an order of the court which deprived it of the power to operate its lines of railway.   *   *   *

*Wynne, McCart & Booty,* for Martin, Wise & Fitzhugh, plaintiffs in error.—The court erred in its conclusion of law in finding that the statute of limitation, pleaded by Martin, Wise & Fitzhugh both by demurrer and by plea, cannot avail defendants Martin, Wise & Fitzhugh, because the court in its conclusion of fact No. 4 finds that after the 23rd day of December, 1889, Martin, Wise & Fitzhugh carried away said 82 bales. This suit, 6090, in which said 82 bales are sued for was filed January 6, 1891. The original petition did not charge Martin, Wise & Fitzhugh with the conversion of said cotton, but only stated in substance that the receivers say that they are not liable for the value of said cotton because the receivers say that Martin, Wise & Fitzhugh demanded and received said cotton; and the first time Martin, Wise & Fitzhugh are charged with the conversion of said cotton is in the amended petition filed May 16, 1893, and it is therein charged that the conversion took place late in December, 1889. This charge is repeated in the amended petition of October 31, 1893, the charge of conversion being brought in the first instance

more than two years after the alleged conversion. Mims v. Mitchell, 1 Texas, 443; Stiles v. Giddins, 21 Texas, 784; Carolan v. Jefferson, 24 Texas, 230; Black v. Drury, 24 Texas, 289.

*A. M. Carter*, for defendants in error.—We contend that, by virtue of the peculiar facts surrounding this case, the M., K. & T. Railway Company is liable upon another ground, viz: estóppel.

This suit was instituted against said receivers in January, 1891, (against the said receivers only.) On the 6th day of April, 1891, the Legislature of the State of Texas passed an act entitled "An Act to authorize the sale and conveyance of the Missouri, Kansas & Texas Railway Company's lines of railroad and properties within this State, and certain lines of railroad heretofore operated by or as the property of the Missouri, Kansas & Texas Railway Company, or as a part of the system of roads within the State known as the Missouri, Kansas & Texas Railway, and to provide for and authorize the sale, transfer and conveyance of said lines of railroad to and the purchase and operation thereof by a single corporation, company or association of persons, to be incorporated under the laws of this State, and to settle and dispose of certain pending suits, brought by the State of Texas against said Missouri, Kansas & Texas Railway Company, wherein the powers, privileges and franchises granted it within the State are sought to be forfeited.

The agreement of counsel filed in this cause was to the effect that Eddy and Cross were the receivers of said M., K. & T. Ry. Co., on the 27th and 30th days of November, 1889, and at the time of filing this suit; had been appointed such by the United States Circuit Court, sitting in the State of Kansas, which appointment had been ratified and confirmed by the United States Court of the District of Texas; that said railroad extended through the State of Missouri, Kansas, the Indian Territory, and over a large part of the State of Texas; that all of this railroad subsequent to the filing of this suit was by order of said court of appointment confirming said receivership re-transferred to the said M., K. & T. Ry. Co.; and that after such transfer all that portion of the said company's railway that was in Texas was sold to the M., K. & T. Ry. Co. of Texas, in pursuance of said act of the Legislature above referred to, and that Eddy and Cross had subsequently been discharged as such receivers.

Now it is apparent that this plaintiff in error had all of this vast property in the hands of a federal court receiver, appointed by a federal court in the State of Kansas; that the State of Texas was proceeding to forfeit its chartered rights and franchises, and to oust it from doing any corporate business in the State of Texas; that it agreed with the people of the State of Texas to take its property out of the hands of said receivers charged with all the debts and obligations that they had incurred, sell all of said property to a new corporation which itself was to become liable for said debts, and that it has done all of these things and now claims that it is incumbent upon the defendants in error to show that there were better-

ments made on the said railroad by said receivers to an extent equal to their claim before they can be entitled to any judgment.

In other words, the record shows that it has ousted the federal court of the jurisdiction to exercise its equitable powers in said receivership matter in behalf of defendants in error in the adjustment of their claim, and that by reason of that fact defendants in error have no remedy against said plaintiff in error.

The third section of said special act was intended to make the M., K. & T. Ry. Co. liable for all the claims against the receivers of said road to the same extent as was applicable to receivers appointed by State courts, as provided in the Act of March 19, 1889 (Gen. Laws, p. 57). And said railway company, by the acceptance of the said special act, is estopped from saying that the Legislature of Texas could not pass any law regulating federal receiverships. The said special act and the Act of March 19, 1889, should be construed, so far as this railroad is concerned, as statutes in pari materia, and binding on said railway company.

We contend that by accepting the provisions of said special act of the Texas Legislature, the voluntary withdrawal of its property from the jurisdiction of the said federal court, and the sale of said property to said new Texas corporation under the provisions of said special act, it is now estopped, and it does not lie in the mouth of said M., K. & T. Ry. Co. to say that the defendants in error must prove any betterments in order to fix its liability. To my mind, such a proposition is wholly abhorrent to every principle of equity and justice.

Did the facts in this case, as found by the Court of Civil Appeals, justify the judgment against said M., K. & T. Ry. Co. as to the 82 bales of cotton? We contend that they did. (1) Of what facts had McFadden's agent (the compress people) notice which should be visited upon McFadden Bros.? (2) Of what facts had McFadden Bros. notice which should be visited upon their said agents? (3) Does the conclusion of fact of the Court of Civil Appeals, or, for that matter, of the trial court, answer either of the above questions? We contend that neither of these questions of fact can be evolved from the conclusions of law and fact found by either the trial court or by the Court of Civil Appeals, and that as no request was made for additional conclusions of law or fact, this court should not reverse the case on that point, or look to the evidence that may be found in the record to ascertain the facts. (Meade v. Land Co., 85 Texas, 515.) There is not in this record any conclusion of fact, found by either the trial court or the Court of Civil Appeals, that at the time the cotton came into the compress it came there as the special property of the said receivers, or that the compress people had any notice of the fact that said receivers had any special property in the same, as carriers or otherwise. There is no finding of fact by either of the lower courts that the compress people were negligent in not finding out said fact. There is no finding of either of said lower courts that the plaintiffs, McFadden Bros., at any time knew that said cotton was the same cotton to which they obtained bills of lading, and that it was in the compress yards. There is no

finding of either of said lower courts that McFadden Bros. were negligent in not ascertaining said fact.    There is no finding by either of said courts that McFadden Bros. had any means of ascertaining said facts.

GAINES, CHIEF JUSTICE.—The defendants in error on the 6th day of January, 1891, instituted two suits against John Martin, W. B. Wise and Frank Fitzhugh, composing the firm of Martin, Wise & Fitzhugh, and against Eddy and Cross as receivers of the Missouri, Kansas and Texas Railway Company; one for the recovery of the value of 82 bales of cotton and the other for the value of 25 bales.    Subsequently it was agreed between the parties that the two suits should be tried as one; and thereafter the plaintiff filed an amended petition in the consolidated suits, in which they made the Missouri, Kansas and Texas Railway Company a party defendant.    A trial was had before the court without a jury, and resulted in a judgment in favor of the plaintiffs, both against Martin, Wise & Fitzhugh and against the railway company, for the value of the 82 bales, and in favor of the latter against Martin, Wise & Fitzhugh in the event that it discharged the recovery.    It was also adjudged that as to the 25 bales of cotton the plaintiffs should recover against the defendant corporation, but that they should take nothing against Martin, Wise & Fitzhugh as to that cause of action.    The plaintiffs recovered nothing against the receivers.    Both the partnership and the corporation appealed to the Court of Civil Appeals, where the judgment was in all things confirmed.    Both have sued out a writ of error to this court.

We will first dispose of the assignments here made by the Missouri, Kansas and Texas Railway Company.    It is alleged in the petition, in the consolidated case, that the cause of action arose while the property of that company was in the hands of Eddy and Cross, as receivers appointed by the United States Circuit Court for the District of Kansas and confirmed by the United States Circuit Court for the ———— District of Texas; that the contract for the carriage of the cotton was made with them as such receivers; and that, since the institution of the suits, they had been discharged, and the property had been restored to the company.    It was also alleged, that pursuant to a special act of the Legislature, approved April 16, 1891, the Missouri, Kansas and Texas Railway Company of Texas had purchased all the railroads of the Missouri, Kansas and Texas Railway Company.    In an agreement signed by the attorneys for all the parties to the suit, it was admitted in substance that these facts, as alleged, were true.

It is insisted in this court, as was insisted in the Court of Civil Appeals, that the facts, as alleged and admitted, did not warrant the trial court in holding the railway company liable for the acts of the receivers, and we are of the opinion that the position is well taken.    It was held, in the case of the Texas & Pacific Railway Company v. Johnson, 76 Texas, 421, and in subsequent cases, that where a railroad had been placed in the hands of a receiver, and had been operated by such receiver at a profit, and net earnings in an amount sufficient to pay the claims incurred by

the receiver as operating expenses had been invested in betterments upon the property, and the road had been returned to the company, the latter was liable for such claims.    When a court of equity takes charge of a railroad and causes it to be operated, it holds the operating expenses a first charge upon the earnings of the road; and, since the lien follows the fund, if it be paid out upon improvements upon the road, and such expenses remain unpaid, the property becomes charged with their payment.    In the case of Texas and Pacific Railway Co. v. Gay, 86 Texas, 571, and in the same case in 30 S. W. Rep., 543, it was also held that when a receiver takes charge of a railroad under a void judgment with the connivance of the company, the latter will be responsible for the torts committed by his servants in operating the road.    Further than this this court has never gone.    A receiver is the agent of the court and not the agent of the owner of the property which is placed in his charge, and it is well settled as a general rule that the owner is in no manner responsible for the receiver's acts.    The court appointing a receiver to take charge of and control a railroad may make the liabilities incurred by him a charge upon the corpus of the property, and upon sale may direct their payment from its proceeds.    (Ellis v. Vernon Ice, Light and Water Co., 86 Texas, 109.)    But the charge so created proceeds from the order of the court and does not arise by operation of law.    It is to be presumed that the receivers in question were properly appointed; and we cannot hold that, from the mere fact that upon their discharge the company took charge of its property, it made itself liable either for a breach of their contracts or for their torts.

Again, as to the 82 bales of cotton, we are clearly of opinion that no case was made against the receivers.    They received the cotton from Martin, Wise & Fitzhugh and gave them therefor a through bill of lading from Fort Worth to Liverpool.    The bill of lading was transferred to the plaintiffs, and the cotton was placed upon the platform of a compress in Fort Worth for the purpose of being compressed.    The compress was leased and was operated by the plaintiffs.    While at the compress it was in the custody of their agents.    A fire having occurred, and some confusion having seemingly arisen in regard to the cotton that was saved from the conflagration, the plaintiffs' agents delivered the 82 bales in controversy to Martin, Wise & Fitzhugh.    Here we have the anomaly of the plaintiffs recovering for the wrong of their own agents, seemingly upon the theory that, because the agents did not know that the cotton had been sold to the plaintiffs and believed that it belonged to Martin, Wise & Fitzhugh, to whom the bill of lading had been issued, the plaintiffs were not responsible for their acts.    Notice to the agent is usually notice to the principal.    In determining the limitations of that rule some courts place it upon the ground of the identity of the two, while others base it upon the theory that the principal, by acting through an agent, should be in no more favorable a position than if he acted for himself.    The latter has been recognized as the true ground by this court.    (Taylor v. Taylor, 29 S. W. Rep., 1057.)    Upon neither theory can the plaintiffs in this case avail themselves of the want of knowledge on the part of their agents.

The act of the agent is the act of the principal, and it is the latter's knowledge that is involved. If the agent may do a wrong by reason of a want of notice of a fact affecting his principal's business it is negligence for the principal not to inform him; and therefore to permit a recovery against the carrier in such a case would be to permit the plaintiffs to recover for their own neglect. Mayhew v. Eames, 3 Barn. & Cress., 601.

Since upon a new trial a case may be made fixing a liability upon the railroad company for the acts of the receivers, it is proper to pass upon the question of the responsibility of the receivers for the 25 bales of cotton, for the value of which suit was also brought. That cotton was also under a through bill of lading, and had been deposited by the receivers at the compress for the purpose of being compressed. After being compressed they permitted it to remain there several days, when it was destroyed by fire. Under the bill of lading the receivers were not liable for the loss of the cotton unless it occurred from their negligence. The trial judge found that the cotton was permitted to remain at the compress an unreasonable length of time after being compressed, and that this was negligence in the receivers. It is claimed, however, that the negligence was not a proximate cause of the loss. The Supreme Court of the United States in Milwaukee Ry. Co. v. Kellogg, 94 U. S., 469, say: "It is generally held that, in order to warrant a finding that negligence or an act not amounting to a wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." It appears from the evidence in this case that this cotton, together with many other bales, was upon the platform, and that it was exposed to ignition by sparks from engines engaged in carrying to and from the compress. It ought to have been reasonably anticipated, under the circumstances, that the cotton would probably be destroyed by fire. It was negligence to leave it so exposed an unreasonable length of time, and we think the loss ought to be deemed a proximate result of that neglect.

As to the recovery for the value of 82 bales of cotton against Martin, Wise & Fitzhugh, we find no error. The action was not barred by limitation. The original petition against them for the value of that cotton and the amended petition set up the same cause of action. The only difference was that in the former the cause of action was defectively pleaded, while in the latter it was well pleaded.

We also think there was evidence to sustain the finding that they received and converted the cotton.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*