## BACCARATT v. BEAUMONT, S. L. & W. RY. CO. (No. 1374.)

(Court of Civil Appeals of Texas. Beaumont. May 12, 1926. Rehearing Denied June 16, 1926.)

1. Appeal and error ⏇1064(2)—Instructions held not ground for complaint as being on weight of evidence, where other instructions on same issue, which were not objected to, were subject to same criticism.

Any error in instructions on issue whether porter, in ejecting plaintiff from train, acted beyond scope of his authority as being on weight of evidence, *held* not ground for complaint, where plaintiff failed to object to other instructions on same issue and, which were subject to same criticism.

2. Trial ⏇296(3).

Instructions on issue whether porter, in ejecting plaintiff from train, acted beyond scope of his authority, *held* not erroneous when considered with other instructions on same issue.

3. Railroads ⏇265—Railroad held not liable for negligence while railroad was being operated by receiver.

Railroad *held* not liable for negligence of porter in ejecting trespasser from train while railroad was being operated by receiver, in absence of proof that, when road was turned back by order of federal court appointing receiver, liability for acts of receiver was imposed on railroad, or assumed by railroad, or that receiver made improvements from current earnings.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Action by Maurice Baccaratt against the Beaumont, Sour Lake & Western Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Howth, Adams & Hart and Frank G. Vaughn, all of Beaumont, for appellant.

Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

HIGHTOWER, C. J. This suit was originally filed by appellant, Maurice Baccaratt, against Frank Andrews, as receiver of the Beaumont, Sour Lake & Western Railway Company, the appellant here; the plaintiff claiming damages for personal injuries alleged to have been sustained by him through the negligence and willful wrong of a porter on one of the passenger trains then being operated by Frank Andrews, as receiver on appellee's railroad. It was alleged by appellant, in substance, that on April 28, 1915, he boarded one of the passenger trains then being operated by said receiver near De Quincy, La., with the intention and purpose of riding the train to the city of Beaumont, Tex.; that when the train had arrived in the city of Beaumont and had just about reached the depot, but before it had come to a stop, the porter discovered appellant in his position on the train and violently assaulted and shoved and pushed him off the train while the same was in motion; and that in some manner he was thrown under the wheels of the train and thereby sustained serious and permanent injuries, which were specified in his petition, but it is unnecessary to mention them here, and he laid his damages in the sum of $30,000.

Appellant further alleged that, at the time he was assaulted and ejected from the train as before stated, appellee's railroad and all of its properties were in the hands of Frank Andrews, as receiver thereof, duly appointed by the federal court for the Southern district of Texas, and that the train on which he was riding at the time he was ejected was being operated by the servants and employés of the receiver, and that the porter who ejected him from the train was one of such employés. He further alleged, in order to show liability against the present appellee, that shortly after the suit was filed against the receiver, Frank Andrews, he was duly discharged as such receiver by the court appointing him, and that by order of the court the properties of appellee were turned back to it without sale; that by the terms of the order liability was imposed upon appellee for all obligations that had been incurred by the receiver during his operation of appellee's properties, in-

---

⏇For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

cluding appellant's claim for damages; that appellee, at the time it took back its properties under the order of the court, agreed to assume and did assume all obligations and liabilities incurred by the receiver, including appellant's claim for damages; that, while appellee's properties were in the hands of said receiver, large sums of money, amounting to several millions of dollars, were expended by said receiver in making improvements and betterments to appellee's properties; that the money so expended was out of current earnings made by the receiver in the operation of appellee's properties while the same were in his hands; and that, therefore, appellee became liable to appellant for the damages sustained by him at the time he was wrongfully ejected from the train, which was then being operated by said receiver.

Appellee answered by general demurrer and general denial, and specially denied that the porter violently and forcibly shoved or pushed appellant from the train, as alleged by him, or that the porter in any manner ejected him from the train, as alleged by him, but that, if the porter did so eject him from the train, such action on the part of the porter was wholly unauthorized by the receiver, and that the porter, if he did eject appellant from the train as claimed by him, was acting beyond the scope of his authority, and that no liability was imposed upon the receiver by reason of such ejection, and none imposed upon appellee. Appellee further alleged, in substance, that, at the time appellant claims to have been ejected from the train by the porter, there were written rules in effect, which had been duly promulgated by the receiver, and were being enforced by him, that prohibited the porter from ejecting trespassers such as appellant was from trains, and that the receiver and the officials under him, who were authorized to promulgate and enforce such rules, did enforce them as best they could, and used the proper care to enforce them as promulgated.

Appellant, by supplemental petition, replied, alleging, in substance, that, if the receiver had in fact promulgated any rule or rules as pleaded by appellee, they were not promulgated with the intention that they should be observed by the operatives of trains, but that they were promulgated with the intention only to be used in lawsuits as a defense when their application would be involved; that, if any such rules were promulgated by the receiver, they were never enforced before, at the time of, or subsequent to, appellant's injuries, but that, on the contrary, they were frequently, customarily, and habitually violated and ignored, by train operatives, while appellee's properties were in the hands of the receiver, and that the receiver and other high officials under him, who had the authority to promulgate such rules and to enforce them, knew of such nonobservance and violation by the train operatives, and that, if they did not actually know of such violations, they would have known thereof by the use of ordinary care on their part, and that, therefore, if any such rules were promulgated, they had become abrogated and were of no effect at the time appellant was ejected from the train by the porter, and that he was acting within the scope of his authority with the receiver's acquiescence and consent at the time he ejected appellant from the train. Appellee replied to this pleading by supplemental answer, joining issue upon the matters of fact raised by it.

The case was tried with a jury on July 2, 1925, after there had been some three or four mistrials theretofore, and was submitted upon special issues, and, upon the verdict as a whole, judgment was rendered in favor of appellee.

There were five special issues submitted for the jury's consideration; the first one being whether or not the porter violently pushed or shoved appellant from the train, as alleged by him. To this issue the jury answered that the porter did so eject appellant from the train. To the next issue the jury answered that the porter was guilty of negligence in so ejecting appellant from the train, and to the next issue the jury answered that the porter's negligence in ejecting appellant from the train was the proximate cause of his injuries. The jury, in response to the fourth special issue, answered that the porter, in ejecting appellant from the train, acted beyond the scope of his authority. The fifth issue had reference to the amount of damages sustained by appellant.

Judgment having been entered upon the verdict in favor of appellee, appellant, after his motion for new trial was overruled, has prosecuted this appeal, challenging, by proper assignments and related propositions, the action of the trial court in submitting for the jury's consideration two special instructions requested by appellee. These instructions are Nos. 5 and 6, and appellant does not challenge the jury's verdict in any respect, nor the action of the court as to any other matter. Special instruction No. 5 complained of was as follows:

"Gentlemen of the jury, you are further instructed in this case that, in order for the porter on a passenger train to have authority to eject trespassers, he must have such authority independent of the conductor's discretion, supervision, and control; in other words, he must have the authority to eject generally, in the absence of the conductor, and without the conductor having previously instructed him as to the particular instance.

"If you believe from the evidence that there was a custom and practice during the receivership for porters to eject trespassers from passenger trains on the Beaumont, Sour Lake & Western Railroad, but that in some of the instances a porter would act under the direct authority of the conductor, and in others he would not so act under the direct authority

of the conductor, but would act independently, in such event you are told that there was no uniform custom in this matter and that there was not such a custom or habitual practice as could abrogate the rules introduced in evidence by the defendant."

Special instruction No. 6 was as follows:

"Gentlemen of the jury, the court instructs you further in this case that the mere fact of the existence of a custom or practice of porters on passenger trains to eject trespassers is not evidence of knowledge on the part of superior officials having authority to promulgate and enforce rules affecting the authority and duties of such porters.

"You are further told that knowledge of such superior official or officials, during the receivership of such a custom or practice, if it existed, is necessary in this case before you can find authority in the porter in question to eject trespassers."

It is appellant's contention, stated in substance, that special instructions Nos. 5 and 6, as we have quoted them above, were both upon the weight of the evidence bearing upon special issue No. 4, as to whether the porter acted within the scope of his authority in ejecting appellant from the train, and that these special instructions took from the jury evidence that was proper to be considered by them in passing upon this issue.

Whether this contention made by appellant is correct or not, we have concluded that the judgment in favor of appellee must be affirmed. But if these special instructions were upon the weight of the evidence, as claimed by appellant, we believe, upon the whole record in this case, that the court's error in giving them was not prejudicial to appellant.

As showing our reasons for this conclusion, we shall let this opinion show the instructions that were given by the trial court in his main charge to the jury to guide them in their answer to special issue No. 4, and shall also let the opinion show certain other special instructions that were requested by appellee and given by the trial court without objection on the part of appellant.

The instruction contained in the court's main charge in connection with issue No. 4 was as follows:

"You are instructed in connection with this issue No. 4 that defendant has introduced in evidence certain rules relating to and purporting to regulate the respective duties of the conductor and the porter on passenger trains, then and there and prior thereto being operated by said receiver, and on this issue you are instructed as follows: If you believe from the evidence that at the time of the injury herein complained of, and for a long time prior thereto (if you so find from the evidence) that it was and had been, during the administration of said receiver, the general custom, habit, and practice for the porters on passenger trains operated by the said receiver during said time to eject trespassers without first reporting to the conductor the presence of the trespassers,

and if you further believe from the evidence that the said receiver's general officers, having the authority to promulgate and enforce rules, knew of such custom, or that in the exercise of ordinary care on their part they would have known thereof, and if you further believe that the general officers of said receiver, having such actual or constructive knowledge (if you so find), thereafter failed and omitted to use ordinary care to enforce the said rules, you may then, and in such event, assume that said rules had been waived by said receiver and that such habitual nonobservance and violation of the said rules (if you so find) had been acquiesced in and approved by the receiver Frank Andrews in the operation of said defendant railroad and by his general officers having authority to promulgate and enforce rules, if you so find, you will answer this question 'yes.' On the other hand, if you believe that the receiver of the said defendant railroad company and his agents enforced the rules promulgated by him prohibiting porters in his employ from ejecting trespassers from moving trains, or used reasonable diligence to enforce same, then, in such event, I charge you that the porter, in ejecting the plaintiff from the train, if he did, was not acting within the scope and authority of his employment, and, in such event, you will answer this issue No. 4, 'No.'"

Special instruction No. 3, requested by appellee and given, was as follows:

"Gentlemen of the jury, the court further instructs you in this case that the conductor of a passenger train during the receivership of Beaumont, Sour Lake & Western Railway Company had no authority to promulgate, or waive or abrogate rules, and, being one of the employés on such trains bound by the rules offered in evidence by the defendant, his knowledge of violations thereof could not have the effect of abrogating said rules. You are also told that no members of the crew working under the conductor could by their knowledge or conduct abrogate said rules. In order for such rules to be abrogated there must have been the consent, either expressed or implied, of the superior officials having authority to promulgate rules and to enforce same, that the abrogation should take place."

Special instruction No. 7, requested by appellee and given by the court, was as follows:

"Gentlemen of the jury, the court instructs you in this case, with reference to the issue of the authority of the porter in question, that there was no implied authority from the general nature of the employment in porters on passenger trains during the receivership of Beaumont, Sour Lake & Western Railway Company to eject trespassers from such trains. You are also told that any such ejection by a porter on any such train during the receivership was contrary to the express rules which the defendant has offered in evidence. If those rules, therefore, were in force and effect, the porter in question had no authority to eject trespassers, and if, as plaintiff alleges, he was ejected by said porter, the ejection would be without authority. In passing upon this issue, whether or not the rules in question were abrogated, you are told that, even though there may have been a custom for porters on passenger trains to eject trespassers during the period

of the receivership, in direct violation of such rules, yet such custom would not bring about and effect an abrogation of such rules unless the superior officials having authority to promulgate and to enforce such rules actually knew of their violation; and you cannot find an abrogation of such rules, even though such superior official or officials may have known of violations thereof, unless you further find that such violations, known to such officials, were so frequent as to indicate to a person of ordinary prudence and judgment exercising the functions of such official that the rules were being customarily and habitually violated upon this line of railroad; and you cannot infer an abrogation of said rules, even though you may believe there was a customary violation and that such officials had knowledge of such customary violation, unless you further believe that, having such knowledge, they failed to exercise that degree of care to see to the enforcement of said rules, as would have been exercised by a person or persons of ordinary care and prudence under the same or similar circumstances, desiring to maintain said rules in force and effect."

[1, 2] There was no objection made by appellant to special instruction No. 3, or special instruction No. 7 just quoted, and we have concluded that these two special instructions, and especially special instruction No. 7, are as much subject to the criticism of being upon the weight of the evidence with respect to special issue No. 4 as are special instructions Nos. 5 and 6, which were objected to by appellant. If we are correct in this, there is no possible room for complaint by appellant as to special instructions Nos. 5 and 6, because, in failing to object to special instructions Nos. 3 and 7, they must be held to have waived the objections to special instructions 5 and 6 on the ground that they were upon the weight of the evidence. Besides, we have concluded that, when the instruction given in the court's main charge in connection with issue No. 4 and those given in special instructions Nos. 3 and 7 are considered in connection with special instructions 5 and 6, the last two special instructions were not calculated to result in any injury to appellant.

[3] There is another reason why we think the judgment in this case must be affirmed, regardless of the error, if any, in the giving of special instructions Nos. 5 and 6, and that is because, as we read this record, no liability was established against the appellee here, Beaumont, Sour Lake & Western Railway Company, for any negligence or wrongful act on the part of the porter in ejecting appellant from the train, if he did so. In order to have established liability against appellee for any such negligence on the part of the porter while its properties were in the hands of the receiver, it was necessary for appellant to allege and prove that, when the road was turned back by order of the federal court appointing the receiver, liability was imposed upon appellee for the acts and conduct of the receiver, and his servants and agents, or that such liability was assumed by appellee when it took back the road, or that the receiver, during his exclusive control, management, and operation of appellee's properties, expended funds upon appellee's properties, in the way of improvements and betterments, which were derived from the current earnings of appellee's properties during the time they were in the hands of the receiver. All these matters were pleaded by appellant, but, as we read the record, we fail to find that any of them were established by evidence. The order of the federal court turning back to appellee its properties and discharging the receiver is not in the record; nor do we find any evidence of any assumption by appellee of any of the receiver's obligations or liabilities; nor do we find any evidence that the receiver, during his operation of the properties, made any improvements or betterments to appellee's properties out of current earnings while in the hands of the receiver. The record shows that all improvements made by the receiver, and there were several hundred thousand dollars worth of them, were paid for out of funds obtained from the sale of receiver's certificates, and not from net or current earnings of the properties. T. & P. Railway Co. v. Johnson, 76 Tex. 421, 13 S. W. 463, 18 Am. St. Rep. 60; Fordyce v. Du Bose, 87 Tex. 78, 26 S. W. 1050; M. K. & T. Railway Co. v. McFadden, 89 Tex. 138, 33 S. W. 853; M., K. & T. Railway Co. v. Wood (Tex. Civ. App.) 52 S. W. 93; T. & P. Railway Co. v. Donovan, 86 Tex. 379, 25 S. W. 10; Hanlen v. Smith (C. C.) 175 F. 192; B., S. L. & W. Railway Co. v. Daniel (Tex. Civ. App.) 195 S. W. 625; B., S. L. & W. Railway Co. v. Daniel (Tex. Civ. App.) 186 S. W. 383; Kirby Lumber Co. v. Cunningham (Tex. Civ. App.) 154 S. W. 288.

Therefore we say that, regardless of any error committed by the court as complained of by appellant, the judgment entered in this case was the proper judgment, and should be affirmed.