Lester PAYNE, Appellant,

v.

Ben SNYDER, et al., Appellees.

No. 9384.

Court of Appeals of Texas,
Amarillo.

April 27, 1983.
Rehearing Denied May 19, 1983.

Donald M. Hunt, Carr, Evans, Fouts & Hunt, Lubbock, for appellant.

Cecil Kuhne, Crenshaw, Dupree & Milam, John C. Ross, Jr., City Atty., Lubbock, for appellees.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

## ON MOTION FOR CORRECTION AND MOTION FOR REHEARING

REYNOLDS, Chief Justice.

The 28 February 1983 opinion underlying our judgment modifying and affirming the trial court's judgment is withdrawn and this opinion is substituted therefor. This opinion, which sets forth the rationale for rendition of the same judgment, is issued contemporaneously with the granting of Ben Snyder's motion to correct a statement in our former opinion, and with the overruling of Lester Payne's motion for rehearing, which caused us to write further on one point of error.

Ben Snyder sued to recover from Lester Payne the unpaid balance of the sale price for, and to foreclose a deed of trust lien on, apartment property Snyder sold to Payne, together with attorney's fees specified in Payne's note and other damages. Payne interposed an affirmative defense and counterclaimed for monetary damages. The City of Lubbock and others intervened, the City seeking recovery of unpaid ad valorem taxes on, and unpaid utilities furnished to, the apartment property.

Following a jury trial and acceptance of the jury's verdict, the court, disregarding some of the jury's answers, rendered judgment. By its judgment, the court decreed a monetary recovery for Snyder from Payne and foreclosure of the deed of trust lien, the City's recovery from Snyder and Payne jointly and severally for the unpaid utility charges, a recovery by Snyder from Payne for attorney's fees in the event of appeals, and denied all other relief sought by the litigants.

Payne alone has appealed. Utilizing six points of error, he seeks reversal of the judgment rendered and the rendition of judgment in his favor or, alternatively, the remand of the cause. Snyder and the City have responded, advocating an affirmance of the judgment. Under the rationale to be expressed, we reform the judgment and affirm.

Snyder and Payne contracted for the sale and purchase of a portion of the Sunnyside Apartments in Lubbock. The contract, completed on a printed form, has an insertion, hand printed at the end of the typed provision for the unpaid balance of the sale price to be represented by Payne's note, stating that personal liability shall be $100,000. Printed paragraphs contain these provisions: if an abstract is furnished, within ten days from its receipt Payne agrees to accept title as shown or to return it with written objections, which are to be cured within a reasonable time by Snyder to show good and marketable title; if a title policy is furnished, Payne agrees to consummate the sale within ten days after the title company approves the title; and in the event of failure to furnish good and marketable title, Payne can either cancel the contract or enforce specific performance.

At the closing on 10 April 1978, Snyder executed a general warranty deed and Payne executed a real estate lien note, for which his personal liability was limited to $100,000 "on this note," and a deed of trust. The instruments were left with J. Collier Adams, an attorney at the abstract and title company where the transaction was closed, for the insertion of the exact legal description of the property in, and the recording of, the appropriate instruments. Payne took possession of the property and paid the first installment due under the note, but did not pay any other payments.

After some unsuccessful negotiations, Snyder filed the suit underlying this appeal, and requested the appointment of a receiver. Following a hearing, the court appointed Juanita Klise as receiver. She filed a bond, took the oath of office, and served as receiver from 8 February 1979 until July of 1979, when she ceased to act as receiver for reasons unconnected with the receivership.

On 11 July 1979, Snyder, acting by and through Adams under a power of attorney and without posting an applicant's bond, filed an application for a temporary receiver, requesting the appointment of Bobby Wilson. The court appointed Wilson as temporary receiver until a permanent receiver could be appointed, set a hearing date, and commanded Payne to appear and show cause why a receiver should not be appointed. The hearing ordered was not held. Wilson did not file a bond or take the oath of office; but, as temporary receiver, he took and remained in possession of the apartment property until late October, 1979.

On 2 November 1979, Snyder, still acting through Adams and without posting an applicant's bond, again applied for the appointment of a temporary receiver, requesting that Jessie Cavazos be appointed. The court appointed Cavazos as temporary receiver until a permanent receiver could be appointed, set a hearing date, and ordered Payne to appear and show cause why a receiver should not be appointed. The hearing was not held. Without filing a bond or taking the oath of office, Cavazos took possession of the apartment property.

In May of 1980, the City gave written notice that utility service to the apartments would be terminated due to nonpayment. Snyder, reciting the likelihood that funds may be removed and unaccounted for, moved the court to require an accounting from Cavazos and, if the accounting reveals a deficiency, to remove Cavazos as receiver.

The court ordered, and Cavazos rendered, an accounting.

Thereafter, the live pleadings positioned the issues for trial determination. Snyder sought from Payne the monetary amounts for the principal balance of the unpaid sale price, together with accrued interest and ten-percent attorney's fees provided for in the note, the unpaid ad valorem taxes, the value of fixtures and equipment removed from the premises, unaccounted for rent, waste of the property, and judgment foreclosing his deed of trust lien. A trial amendment allowed Snyder to charge Payne with breach of contract and liability for damages flowing therefrom.

In turn, Payne sought judgment that Snyder (1) take nothing because of breach of the warranty of title or, alternatively, because of a total or partial failure of consideration in that Snyder wrongfully dispossessed him from the premises, and (2) is monetarily liable (a) for fraud inducing Payne to enter into the contract, and (b) for deceptive trade practices committed in the transaction. Alternatively, Payne pleaded and sought a judgment decreeing that Snyder either was liable monetarily for wrongful receivership in the appointment of Wilson and Cavazos, or that the transaction should be rescinded with a restoration of the status quo. Furthermore, Payne pleaded a right to and judgment for title and possession of the premises, together with damages for the rental value and waste. During trial, Payne was permitted a trial amendment to plead that if his action for wrongful receivership was not applicable, Snyder was liable in damages, both actual and exemplary, for intentional trespass.

The City intervened to ask for judgment against Snyder and Payne as parties, and against Klise, Wilson and Cavazos as receivers, for the unpaid amounts of the accrued ad valorem taxes and the unpaid utility charges while the property was in the hands of the receivers. The receivers were alleged to be liable under the contracts they had signed for utilities and as agents of Snyder and Payne. All litigants, except Wilson, stipulated in writing that the total

amount owing the City for utility services was $14,062.48.

Klise and Cavazos each intervened to claim compensation due as a receiver. Two apartment tenants intervened, asking the court to order utility services to be restored to the property. Each party litigant, except Wilson and the apartment tenants, filed responses to pleadings directed to them.

As material to the appeal, the jury in answering the special issues submitted, correspondingly found, by our paraphrasing, that

(8) Payne waived any right to claim that Wilson and Cavazos were not lawfully in possession of the property;

(9) Payne's limitation of personal liability provided for in the contract was intended by the parties to apply to the unpaid balance on the note;

(10) Payne removed approximately 35 porches from buildings on the premises, (11) which damaged the property (12) by reducing its fair market value by $15,000; and

(13) Payne removed 102 evaporative air conditioners from the property (14) of the reasonable value of $4,000 at the time of removal.

The jury, in answering other special issues submitted, correspondingly failed to find, by our paraphrasing, that

(15) Snyder, Adams or Jim Lewis, acting by and through Wilson and Cavazos, voluntarily took possession of the property and excluded Payne from possession;

(32) before Payne discontinued payments, Snyder failed to deliver to Payne a good and sufficient warranty deed conveying good and marketable title to the property;

(34) Snyder and Payne intended under the contract that Payne's personal liability to Snyder be in the maximum amount of the first $100,000 on the total contract price, or (35) on the promissory note to be executed under the contract;

(48) when Wilson requested and contracted for utility services for the property, he was acting as the agent of Snyder;

(49) when Wilson requested and contracted for utility services for the property, he was acting as the agent for Payne;

(50) when Cavazos requested and contracted for utility services for the property, he was acting as the agent for Snyder;

(51) when Cavazos requested and contracted for utility services for the property, he was acting as the agent for Payne;

(52) when Klise requested and contracted for utility services for the property, she was acting as the agent for Snyder; and

(53) when Klise requested and contracted for utility services for the property, she was acting as the agent for Payne.

Accepting the jury's verdict, the court rendered judgment. First, the court decreed a foreclosure of the deed of trust lien and directed that an order of sale shall issue. Next, the court awarded Snyder a judgment against Payne in the total amount of $429,280.62, bearing 9% annual interest, of which Payne is personally liable to Snyder for $126,884.84 on the unpaid balance after applying the proceeds of the sale ordered. Following the decree that Cavazos take nothing by his plea in intervention, the court granted the City's motion to disregard the jury's answers to special issues nos. 48 through 53, inclusive, and set aside those answers "for the reason that they are contrary to the evidence and not supported by the evidence." Then, the court ordered that the City recover from Snyder and Payne, jointly and severally, the sum of $14,062.48, with 9% annual interest. In addition, the court decreed, "pursuant to agreement made by the parties in open court," that Snyder shall recover from Payne, as attorney's fees, $5,000 if Payne appeals the judgment to the court of appeals, $3,500 additional if Payne files an application for writ of error to the Supreme Court of Texas, and $1,500 additional if the writ of error is granted. And last, the court decreed that all relief prayed for by the parties and not granted is denied.

As a threshold matter, we notice the items constituting the $126,884.84 for which Payne was adjudged personally liable to Snyder. Both Snyder and Payne agree that the total amount is composed of $100,000 for Payne's personal liability under his note, $15,000 for property damage occasioned by Payne's removal of the 35 porches from the apartment buildings, $4,000 for the value of the air conditioners Payne removed from the property, and $7,884.84 for ad valorem taxes.

■ With his initial point of error, Payne attempts to void the judgment on the theory that Snyder failed to convey a marketable title. Payne recognizes that in answering special issue no. 32, the jury failed to find that Snyder failed to convey good and marketable title, an issue on which Payne had the burden of proof, but he maintains that the absence of marketable title was established as a matter of law. However, it is unnecessary that we investigate the state of the title.

The rights and obligations of the parties respecting the title were fixed by the contract. The contract itself did not obligate Snyder to furnish either an abstract of title or a title policy; it merely provided for Payne's obligations "[i]f abstract be furnished," or "[i]f title policy be furnished." The contractual provision for good and marketable title inured to the benefit of Payne, but if the title were not marketable, then under the contract, it was wholly optional with Payne whether to cancel the contract for lack of good and marketable title or to accept such title as Snyder had and enforce performance of the contract.

Payne has not contested the testimony that he did not ask for an abstract of title and specifically asked that a title policy not be written. Neither has he disputed the testimony that he acknowledged by his signature that he had been advised he should have an abstract of title and an attorney's opinion or a title policy, and that he wished to close the transaction without an abstract or a title policy. Furthermore, Payne does not take issue with the testimony that he

first complained of the title when he answered Snyder's foreclosure suit.

The legal effect of Payne's waiver of his contractual rights and default in his contractual obligations to insure that a marketable title was conveyed is that he now cannot object to either Snyder's breach of contract in this regard or to the absence of marketable title, if indeed the title is not marketable. Thus, Payne is in no position to contend that he is entitled to rescind the transaction on the ground he now objects to Snyder's title. *Huddleston v. Fergeson*, 564 S.W.2d 448, 451–52 (Tex.Civ.App.—Amarillo 1978, no writ). The first point is overruled.

As his second point for reversal, Payne urges that a new trial was and is justified because Snyder, acting through Wilson and Cavazos who never qualified as receivers, dispossessed him from and trespassed upon his property to his damage which should be assessed by a jury. In advancing this point, Payne realizes that the jury, in answering special issues nos. 8 and 15, respectively found that he waived any right to claim that Wilson and Cavazos were not lawfully in possession of the property and failed to find the trespass; but, he argues, the evidence conclusively establishes the absence of waiver and the presence of trespass, and any contrary findings are against the weight of the evidence. We are not in accord.

The receiverships were ancillary to the main suit. The receivership of Klise, instituted with the required formalities by Snyder and with the acquiescence of Payne, is not questioned. What is questioned by Payne are the court's appointments of Wilson and Cavazos upon the requests of Snyder without an applicant's bond, and Wilson's and Cavazos' operations, which Payne claims were detrimental, without qualifying as receivers by taking the oath of office and filing a receiver's bond.

Payne advocates the application of the holding in *Butler v. Thomasson*, 256 S.W.2d 936 (Tex.Civ.App.—Eastland 1953, no writ), that one who procures the wrongful appointment of a receiver is liable for all the damages caused as the actual, natural and proximate result of the unwarranted appointment. *Id.* at 939. *Butler* is inapposite. In that cause, there was an adjudication that the applicant had procured the wrongful appointment of a receiver; in this cause, there has been no adjudication that Snyder wrongfully procured the appointments of Wilson and Cavazos as temporary receivers. Notwithstanding, Payne argues that by successively applying for and securing the appointments of Wilson and Cavazos as temporary receivers without filing an applicant's bond, Snyder committed a trespass when the temporary receivers took possession of the property without taking the oath of office and filing a receiver's bond.

■ It is provided that no receiver shall be appointed until the party applying therefor has filed a good and sufficient bond, Rule 695a, Texas Rules of Civil Procedure, and that before a receiver enters into his duty, he shall file an oath and a receiver's bond. Tex.Rev.Civ.Stat.Ann. art. 2296 (Vernon 1971). Although the failure to comply with the statutes and rules controlling the appointment of a receiver may be rectified in an appeal for that purpose, *Continental Homes v. Hilltown Property Owners*, 529 S.W.2d 293, 295 (Tex.Civ.App.—Fort Worth 1975, no writ); *Rogers v. Boykin*, 286 S.W.2d 440, 443 (Tex.Civ.App.—Eastland 1956, no writ), neither the rule nor the statute cited provides that an appointment made in violation of its inhibition shall be void. Rather, because the appointment of a receiver in a proceeding ancillary to the main suit is within the court's jurisdiction, *Spence v. State Nat. Bank*, 5 S.W.2d 754, 755 (Tex.Comm'n App.1928), and power, *Hunt v. State*, 48 S.W.2d 466, 469 (Tex.Civ.App.—Austin 1932, no writ), such an appointment is merely voidable. *James v. Roberts Telephone & Electric Co.*, 206 S.W. 933, 934 (Tex.Comm'n App.1918, judgmt adopted); *Rogers v. Boykin, supra.*

Additional to the lack of Snyder's application bonds and Wilson's and Cavazos' oaths and bonds just mentioned, there is record evidence that Payne had notice of the appointments of Wilson and Cavazos as

temporary receivers. Payne conceded that neither he nor, as far as he knew, his attorney filed any objection to, or moved the court for the vacation of, the appointments. His first documented objection to the appointments came after the instigation of this litigation.

 The matters of waiver and trespass having been submitted to the jury, we cannot fault either the jury's finding that Payne waived any right to claim that Wilson and Cavazos were not lawfully in possession of the property or the jury's failure to find that Snyder, individually or through agency, voluntarily took possession of the property and excluded Payne from possession. The jury was entitled to believe that Payne waived any claim that Wilson's and Cavazos' possessions were unlawful because he did not seasonably urge his objections to their appointments. *James v. Roberts Telephone & Electric Co., supra.* Furthermore, since the court's appointments of temporary receivers, albeit irregular, were not void, and Payne waived his right to claim that possession by them was unlawful, their possession under the court's order was legal. *Bonner v. Hearne,* 75 Tex. 242, 12 S.W. 38, 41 (1889). The possession being legal, the receivers' right to possession was paramount to Payne's right of possession. *Ex parte Britton,* 127 Tex. 85, 92 S.W.2d 224, 226 (1936). It follows, then, that any exclusion of Payne from possession of the property was not because of any trespass by Snyder acting through Wilson or Cavazos. The second point of error is overruled.

Evidence was adduced that during Payne's possession, and Klise's receivership, of the premises, capital improvements were made which caused the property to appreciate in value. While he was in possession, Payne removed air conditioners from the apartments, and about the time the Klise receivership commenced, he removed porches from the building. The jury found, in answering special issues nos. 10 through 14, inclusive, that Payne's removal of the porches reduced the fair market value of the property by $15,000, and that he removed air conditioners of the reasonable

value of $4,000. These findings are the basis for $19,000 of the judgment granted Snyder.

With his third point of error, Payne attacks the $19,000 award on the ground that there is no legal basis for his liability. He argues that notwithstanding the jury's findings, before he could be liable for the amounts it must be established that the removal of the items impaired the security for his debt, which Snyder failed to show. Responding, Snyder submits that the unchallenged findings make it clear that Payne's removal of the items did impair or damage the security of the property, particularly since one witness opined that the market value of the property at the time of trial was virtually zero.

 Snyder's allegation of waste to the property by Payne's removal of the porches and air conditioners was, in reality, an action for injury to his security, the measure of damage for which is the difference in value of the mortgaged premises before and after the removal of the items, provided the security left be insufficient to secure the debt. However, if the security be of sufficient value to secure the debt, then there is no injury to the security and, thus, no legal basis for damage. *Carroll v. Edmondson,* 41 S.W.2d 64, 65 (Tex.Comm'n App.1931).

 Resultantly, the special issue no. 14 finding that the air conditioners had a market value of $4,000 at the time they were removed is no basis for Snyder's recovery of that amount. *Id.* And the special issue no. 12 finding that the fair market value of the property was reduced $15,000 by the removal of the porches can form no basis for Snyder's recovery of that amount unless it is shown that after the removal of the porches the market value of the property was less than the debt. *Id.; American Nat. Ins. Co. v. City of Port Arthur,* 62 S.W.2d 256, 258 (Tex.Civ.App.—Beaumont 1933, no writ).

 The testimony that the value of the property at the time of trial was virtually zero is not, without more, any evidence of the value of the security at the time the

items were removed some two years previously. Other than this testimony, Snyder has not directed us to any record evidence, and in our review of the record we did not notice any evidence, bearing on the market value of the property just after the items were removed. Therefore, absent evidence to support a finding on market value at the time of removal, there can be no deemed finding in support of the judgment, Tex.R. Civ.Pro. 279; *Freedom Homes of Texas, Inc. v. Dickinson,* 598 S.W.2d 714, 717 (Tex. Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.), and no legal basis for Payne's liability for removal of the items. Accordingly, we sustain point of error three, which requires that the sum of $19,000 be eliminated from Snyder's recovery under the judgment.

Payne submits, by his fourth point of error, that Snyder failed to offer any evidence or secure any finding on either (1) the existence or amount of any unpaid taxes, or (2) the payment of any taxes by Snyder as permitted by the deed of trust. Snyder has not challenged this statement of the record by Payne, and the City, whose intervention in part was to recover unpaid ad valorem taxes, has not taken exception to the court's judgment denying it any recovery of the unpaid taxes for which it prayed.

Since Payne's factual statement of the record concerning ad valorem taxes has been neither answered nor challenged in any manner, we are entitled to accept it as correctly stating the factual record without further resort to the record. Tex.R.Civ.Pro. 419; *Campbell v. Campbell,* 477 S.W.2d 376, 378 (Tex.Civ.App.—Amarillo 1972, no writ). Moreover, our examination of the appellate record in connection with the appeal supports the factual statement. Accordingly, we sustain the fourth point, which requires that the judgment be reformed to eliminate therefrom the $7,884.84 recovery awarded Snyder from Payne for ad valorem taxes.

As previously noticed, the court decreed that "pursuant to agreement made by the parties in open court," Snyder shall recover from Payne stated amounts as attorney's fees in the event Snyder appeals. The ref-erenced agreement consisted of stipulations that in lieu of submitting an issue of fact to the jury, the court may determine, by applying the law to the other facts found by the jury, the entitlement of either Snyder or Payne to attorney's fees in the amounts which had been stipulated as reasonable and controlling for trial and appeals.

The judgment decree of the attorney's fees awarded to Snyder in the event Payne appeals is the subject of Payne's fifth point of error. He contends that the judgment should be reversed as to the award (1) if the note and mortgage should be rescinded as urged in his first point of error, or (2) if the offsetting damages resulting from the trespass exceeds the note liability as argued under the second point, or, alternatively (3) because his personal liability of $100,000 under the note, which provides for attorney's fees to collect or sue on the note, limits his liability to that amount, which is exceeded by the judgment for attorney's fees.

Snyder responds that the award of attorney's fees is proper and not in conflict with the note provision limiting Payne's personal liability. He argues that both by the express provisions of the note—*viz.,* the personal liability limitation provision is positioned immediately after the proviso for paying the amount of the note over a period of time and before the proviso for attorney's fees in the event of default and intervention of an attorney—and by the jury's special issue no. 9 finding, it is clear that the limited liability provision was intended to apply only to the principal and interest due on the note, and not to attorney's fees.

Inasmuch as we have overruled Payne's first two points of error, his first two contentions of non-liability are not viable. Nor do we subscribe to his third contention that the allowance of the stipulated amounts for attorney's fees in the event of appeals is an increase by those amounts of, and exceeds, his liability under the note, although our reasoning differs from that advocated by Snyder.

■ The $429,280.62 judgment rendered against Payne included amounts for, in addition to other items, the principal and interest due under the note, plus the stipulated amount of $15,000 for attorney's fees through trial, a sum less than one-half of the amount actually provided for attorney's fees by the terms of the note. The note provision for attorney's fees is in the nature of a contract to indemnify the holder for attorney's expenses actually incurred in collecting the principal and interest due under the note; however, the contractual amount may be, as it was here, reduced to an amount determined to be reasonable under the circumstances. *F.R. Hernandez Const. v. Nat. Bk. of Commerce,* 578 S.W.2d 675, 676–77 (Tex.1979).

■ Thus, Payne's liability on the note was for principal due, accrued interest, and stipulated attorney's fees, even though his personal liability was limited to $100,-000. Given the proper predicate in the pleadings and proof for recovery of attorney's fees in the trial court, attorney's fees for any appeal may be awarded by the trial court, *Pleasant Hills Children's Home, Etc. v. Nida,* 596 S.W.2d 947, 953 (Tex.Civ.App. —Fort Worth 1980, no writ), in its discretion. *Olivares v. Porter Poultry & Egg Company,* 523 S.W.2d 726, 732 (Tex.Civ. App.—San Antonio 1975, no writ). The award, being wholly dependent upon Payne's election to appeal, does not, in and of itself, increase the amount of liability adjudged; rather, it is an allowance for added costs which will be incurred by Snyder to enforce the collection of the amount adjudged due him if Payne elects to pursue, in reality, an unsuccessful appeal. *Accord, Grimes v. Robitaille,* 288 S.W.2d 211, 213 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.); *Scanlan v. Gulf Bitulithic Co.,* 27 S.W.2d 877, 880 (Tex.Civ.App.—Austin 1930), *rev'd on another ground,* 44 S.W.2d 967 (Tex.Comm'n App.1932, holding approved).

In its true perspective, then, the award of attorney's fees in the event of appeals is not an increase in the amount of liability adjudged; instead, it is of the same nature as the allowance made for interest on the unpaid judgment, which is allowed for the failure of an appellant to pay the sum due. *Davidson v. Clearman,* 391 S.W.2d 48, 51 (Tex.1965). Consequently, there being a legal basis for the award of attorney's fees in the event of appeals, the court did not abuse its discretion in awarding the sums stipulated. The fifth point of error is overruled.

The City sought to recover the stipulated $14,062.48 in unpaid utility charges from Snyder and Payne on the theory that Klise, Wilson and Cavazos, who were appointed by the court as receivers, were their agents. Upon the submission of this theory to the jury in special issues nos. 48 through 53, inclusive, the jury failed or refused to find any fact of agency. Proposing that there was no evidence to support the jury's answers to these issues and that agency had been conclusively established, the City moved the court to, and the court did, disregard the answers and render judgment that the City recover from Snyder and Payne, jointly and severally, the $14,062.48 for unpaid utilities.

By his sixth and last point, Payne charges the court erred in rendering judgment against him for the $14,062.48 on the grounds that no evidence or even a legal basis exists for the imposition of that liability upon him. The City counters that the law allows the imposition of liability upon an owner for utility services incurred by a court-appointed receiver, that the evidence conclusively established the liability of Payne and, by a cross-point, that if agency was not conclusively established, the judgment must be upheld because the jury's answers have insufficient support in the evidence.

■ Although a receiver represents all parties interested in the litigation wherein he is appointed, *Ex parte Britton, supra,* generally he is the agent of the appointing court, *Cocke v. Wright,* 39 S.W.2d 590, 592 (Tex.Comm'n App.1931), and not the agent of the owner whose property is placed in his charge. *Missouri, K. & T. Ry. Co. v. McFadden,* 89 Tex. 138, 33 S.W. 853, 854 (1896). There are circumstances, as the

City notes in its brief, under which the receiver is held to be the agent of the property owner as a matter of law, but the City does not claim, much less undertake to demonstrate, the presence of any one of these circumstances in this cause. Instead, being aware that an agency relationship must be proved because it will not be presumed that a person who purports to act as a receiver is in fact an agent, *Trinity & S. Ry. Co. v. Brown,* 91 Tex. 673, 45 S.W. 793, 794 (1898), the City sought jury findings of agency. However, the City failed to persuade the jury to find from a preponderance of the evidence that any agency existed.

It did not profit the City to propose to the trial court that there was no evidence to support the jury's answers, and it does not profit the City to argue here that there is an absence of evidence to show that the receivers were not Payne's agents, for a jury's failure to find a fact need not be supported by affirmative evidence. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973). Thus, before the court is empowered to disregard the jury's answers, it must appear that the evidence conclusively establishes that Klise, Wilson and Cavazos were Payne's agents, Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361, 364 (1960); otherwise, the court is without power to substitute its own findings on the issues properly submitted to the jury. *Bond v. Otis Elevator Company,* 388 S.W.2d 681, 685 (Tex.1965).

Resort to the record reveals that Klise was informed that she took orders only from the court, although Payne did tell her what he thought she should do in managing the property. Wilson testified that his instructions on managing the property came from one other than Payne. It was the testimony of Cavazos that he believed he was working for Snyder, and that he took instructions from two people, neither of which was Payne.

The abbreviated statement of the evidence bearing on agency, and the City does not suggest any other, shows that agency was not conclusively established. At most,

the evidence merely raised fact issues for the jury's resolution. Hence, the court was precluded from disregarding the jury's answers, and should have rendered judgment on this portion of the verdict, unless there is merit to the City's "insufficient evidence" crosspoint. *Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206, 210 (1950).

After considering all of the evidence under the proper standard of review, we cannot say that the jury's answers are so against the great weight and preponderance of the evidence as to be manifestly unjust. Conformably, the City's cross-point is overruled and Payne's sixth point is sustained, necessitating the elimination of Payne's liability for the $14,062.48 judgment recovered by the City.

Accordingly, that portion of the judgment decreeing that Snyder recover $126,884.64 from Payne is reformed by eliminating therefrom the sum of $26,884.64, and that portion of the judgment decreeing that the City recover $14,062.48 from Snyder and Payne, jointly and severally, is reformed by eliminating any recovery by the City from Payne. In all other respects, the judgment, as reformed, is affirmed.

Costs of appeal are adjudged as follows: Lester Payne, 70%; Ben Snyder, 20%; and the City of Lubbock, 10%. Tex.R.Civ.Pro. 448.